## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARIAN "JOSIE" WASHINGTON-MCQUAY**<br>**West Chester, PA 19382**<br><br>**Plaintiff,**<br>**v.**<br><br><br>**WW NORTH AMERICA HOLDINGS, LLC;**<br>**675 Sixth Avenue, 6th Floor**<br>**New York, NY 10010,**<br><br>**WW NORTH AMERICA HOLDINGS, INC.**<br>**675 Sixth Avenue, 6th Floor**<br>**New York, NY 10010,**<br><br>**&**<br><br>**WW INTERNATIONAL, INC. f/k/a**<br>**WEIGHT WATCHERS**<br>**INTERNATIONAL, INC.**<br>**675 Sixth Avenue, 6th Floor**<br>**New York, NY 10010**<br>**Defendants.** | :<br>:<br>: **CIVIL ACTION NO.  2:22-cv-01423-GJP**<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>;<br>:<br>:<br>: |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

## I.    INTRODUCTION

Plaintiff, Marian Washington-McQuay, brings this action against her former employers,

WW North America Holdings, LLC, WW North America Holdings, Inc., and WW International,

Inc. f/k/a Weight Watchers International, Inc. ("Defendants").  Defendants discriminated against

Plaintiff based on her race and disability and additionally retaliated against her for engaging in

protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. § 2000e, *et seq.* ("Title VII"), Title 42 U.S.C. §1981 ("Section 1981"), the Americans

with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1)(a) *et seq.* ("NYCHRL"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"). Defendants further discriminated and retaliated against Plaintiff in violation of the Family Medical Leave Act, 29 U.S.C. §2601, *et seq.* ("FMLA"). Defendants additionally failed to pay Plaintiff commissions owed to her in violation of the Wage Payment and Collection Law, 43 P.S. 206.1, *et seq.* ("WPCL").  Plaintiff seeks all damages allowable under the law.

## II.    PARTIES

1.      Plaintiff, Marian "Josie" Washington-McQuay, is an individual and a citizen of the Commonwealth of Pennsylvania.

2.      Plaintiff is African American.

3.      Defendant WW North America Holdings, LLC is a limited liability company with a place of business at 675 Sixth Avenue, 6th Floor, New York, NY 10010.

4.      Defendant WW North America Holdings, Inc. is a corporation with a place of business at 675 Sixth Avenue, 6th Floor, New York, NY 10010.

5.      Defendant WW International, Inc. f/k/a Weight Watchers International, Inc is a corporation with a place of business at 675 Sixth Avenue, 6th Floor, New York, NY 10010.

6.      At all times material hereto, Defendants employed more than fifty (50) employees.

7.      At all times material hereto, Defendants collectively constituted Plaintiff's employer under the joint and/or single employer doctrine.  Upon information and belief, Defendants shared common management, had interrelated operations, and collectively controlled

Plaintiff's job duties and responsibilities

8.      At all times material hereto, Defendants acted by and through their authorized

agents and/or employees acting within the course and scope of their employment with

Defendants and in furtherance of Defendants' business.

9.      At all times material hereto, Defendants acted as an employer within the meaning

of the statutes which form the basis of this matter.

10.     At all times material hereto, Plaintiff was an employee of Defendants within the

meaning of the statutes which form the basis of this matter.

## III.    <u>JURISDICTION AND VENUE</u>

11.     The causes of action that form the basis of this matter arise under Title VII,

Section 1981, the ADA, the FMLA the NYSHRL, the NYCHRL, the PHRA, and the WPCL.

12.     The District Court has jurisdiction over Count I (Title VII), Count II (Section

1981), Count III (the ADA), and Count IV (FMLA) pursuant to 28 U.S.C. §1331.

13.     The District Court has jurisdiction over Count V (NYSHRL), Count VI

(NYCHRL), Count VII (PHRA), and Count VIII (WPCL) pursuant to 28 U.S.C. §1367.

14.     Venue is proper in the District Court pursuant to 28 U.S.C. §1391(b).

15.     On or about November 23, 2020, Plaintiff filed a Complaint with the

Pennsylvania Human Relations Commission ("PHRC"), cross filed with the Equal Employment

Opportunity Commission ("EEOC"). Attached hereto, incorporated herein, and marked as

Exhibit "1" is a true and correct copy of the PHRC Complaint (with personal identifying

information redacted).

16.     On or about July 22, 2021, Plaintiff filed a Second Complaint with the PHRC,

cross filed with the EEOC. Attached hereto, incorporated herein, and marked as Exhibit "2" is a

true and correct copy of the Second PHRC Complaint (with personal identifying information redacted).

17.     On or about September 22, 2021, Plaintiff filed a Third Complaint with the PHRC, cross filed with the EEOC. Attached hereto, incorporated herein, and marked as Exhibit "3" is a true and correct copy of the Third PHRC Complaint (with personal identifying information redacted).

18.     On or about February 1, 2022, the EEOC issued to Plaintiff a Dismissal and Notice of Rights. Attached hereto, incorporated herein, and marked as Exhibit "4" is a true and correct copy of this notice (with minor redactions for purposes of electronic filing of confidential/identifying information).

19.     Plaintiff is filing this complaint within ninety (90) days from her receipt of this notice.

20.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.    FACTUAL ALLEGATIONS

21.     Plaintiff was employed by Defendants from in or about June 2016 until on or about September 1, 2021, the date of her unlawful termination of employment.

22.     Plaintiff held the position of Sales Executive.

23.     Plaintiff's W2 for calendar years 2016, 2017, and 2018 listed Weight Watchers North America, Inc. as her employer.

24.     Plaintiff's W2 for calendar year 2019 listed Weight Watchers North America Holdings, Inc. as her employer.

25.     Plaintiff's W2 for calendar years 2020 and 2021 listed WW North America

Holdings, LLC as her employer.

26.    Plaintiff consistently performed her job duties in a highly competent manner.

27.    Plaintiff was based out of her home office in Pennsylvania.

28.    Plaintiff regularly traveled to and worked in New York City and New York state.

29.    Plaintiff traveled to and worked in New York City and New York state as part of her job duties for several reasons, including but not limited to: Plaintiff's assigned sales territory covered New York City and New York state and Plaintiff reported to individuals within Defendants who were based in Defendants' New York City headquarters.

30.    Specifically, prior to the COVID-19 pandemic, Plaintiff's regular work-related travel to New York, New York included spending several days per week each month within New York, New York.

31.    From the time of Plaintiff's hiring until in or about April 2019, Plaintiff reported to Will Harbour (white), National Sales Manager. Mr. Harbour performed his day-to-day job duties out of Defendants' New York, New York office.

32.    In or about February 2018, while Plaintiff was working in New York, New York, Defendants removed approximately sixty-two (62) accounts from Plaintiff's New York territory, which reduced her compensation and future opportunities to work in New York city and state.

33.    Plaintiff was the only African American employee reporting to Harbour and the only employee who had accounts removed.

34.    In or about March 2019, Harbour separated from Defendants. Defendants changed the title of his now vacant National Sales Manager position to Vice President of Sales.

35.    On or about April 26, 2019, Plaintiff was appointed Interim Vice President of Sales.

36.     Plaintiff expressed interest in being promoted into the Vice President of Sales position permanently.

37.     On or about July 29, 2019, while Plaintiff was working in Defendants' New York, New York office, Defendants informed Plaintiff that they would not promote her into the position of Vice President of Sales.

38.     Had Defendants promoted Plaintiff into the Vice President of Sales position, the position would have required additional travel to Defendants' New York, New York headquarters to attend meetings.

39.     Defendants instead hired Timothy Patno (white) into the Vice President of Sales position. Mr. Patno performed his day-to-day duties remotely from Florida, but traveled to New York, New York for meetings.

40.     Patno was an external candidate who was less experienced and qualified than Plaintiff for the position of Vice President of Sales.  In fact, Plaintiff thereafter trained Patno for the Vice President of Sales position.

41.     Plaintiff began reporting to Patno in or about August 2019.

42.     At all times, Plaintiff was the only African American employee who reported to Patno.

43.     Defendants subjected Plaintiff to invidious discrimination.

44.     In or about September 2019, Plaintiff gave a work presentation.  Following Plaintiff's presentation, Plaintiff and the only other black individual present during the presentation were asked to leave the meeting.

45.     Following the meeting, Plaintiff complained to Defendants of race discrimination in connection with Defendants' actions.

46.    Defendants failed to take appropriate corrective and remedial action.

47.    Shortly thereafter, Defendants removed accounts from Plaintiff, which reduced Plaintiff's compensation and future opportunities, and assigned them to a newly hired white employee, Megan Voight, Sales Executive.

48.    Plaintiff was more qualified to manage the accounts than Voight.

49.    Plaintiff expressed to Defendants an interest in serving as the Sales Liaison for Defendants' franchise partners and training the franchise teams, which was an important role that would have provided her significant exposure within the company. In or about October 2019, Defendants instead assigned the responsibility to a less qualified white employee, Jennifer McTigue, Regional Sales Manager.

50.    In or about October 2019, Defendants hired Laura MacDonald (white) for the newly created Director of Business Development position.

51.    Defendants did not post the position or give Plaintiff an opportunity to apply. Had the position been posted, Plaintiff would have applied for it.

52.    Plaintiff was more qualified than McDonald for the Director of Business Development position.

53.    Following MacDonald's hiring, Defendants removed certain job duties and responsibilities from Plaintiff and assigned them to MacDonald.

54.    In or about October 2019, during Defendants' National Meeting, during a Sales Team breakout session, Patno instructed a less qualified white employee to oversee the meeting instead of Plaintiff.

55.    In or about December 2019, Patno told Plaintiff, while she was working in Defendants' New York, New York office, that she was not invited to attend a meeting with one

of her largest clients at Defendants' headquarters in New York City. Other white employees were permitted to attend the meeting.

56.    In or about January 2020, Patno announced a territory realignment. Plaintiff was the only Sales Executive reporting to Patno who had accounts and states removed, which reduced Plaintiff's compensation and future opportunities.

57.    The accounts and states removed from Plaintiff were assigned to Voight, who was less qualified than Plaintiff to manage these accounts.

58.    On or about February 4, 2020, Plaintiff secured a significant account, the CVS Health/Caremark/Aetna account.

59.    On or about February 25, 2020, Defendants removed the CVS Health/Caremark/Aetna account from Plaintiff and gave it to MacDonald, who was less qualified than Plaintiff to handle this account.

60.    In or about late March 2020, Defendants' office closed due to the outbreak of the COVID-19 pandemic, which forced all Defendants' employees to work remotely from home.

61.    Months later, Defendants Human Resources department emailed an announcement to all employees indicating that those employees who lived within New York, New York were permitted to return to the office, if they chose. Within that same email, Defendants HR announced a "Work from Anywhere" plan that allowed all employees the option to work remotely.

62.    On or about June 3, 2020, during a company presentation, Defendants unjustly gave credit to MacDonald for the CVS Health/Caremark/Aetna account that Plaintiff had secured.

63.    On or about June 5, 2020, Plaintiff participated in a conference call with

Kimberly Seymour, Senior Vice President, Corporate Human Resources, and approximately

thirty (30) other employees, wherein they discussed recent protests in connection with the Black

Lives Matter movement.

64.    Plaintiff complained about the lack of career advancement opportunities that

existed for African American employees working for Defendants and the lack of diversity within

Defendants' workforce. Plaintiff suggested that Defendants hold diversity training, develop

accountability for race discrimination, and suggested outreach to the black community.

65.    Plaintiff thereafter complained to Defendants of discrimination on numerous

additional occasions throughout June and July 2020, including, without limitation, the lack of

career advancement and opportunities for African American employees, Defendants' failure to

provide Plaintiff with a promotion despite her repeated interest in career advancement, and

Defendants' removal from Plaintiff of the CVS Health/Caremark/Aetna account.

66.    Defendants failed to take appropriate remedial and corrective action.

67.    Defendants informed Plaintiff that they did not foresee any career advancement

going forward and that Plaintiff had been denied opportunities because of employees'

"perception" of Plaintiff.

68.    These career advancement opportunities included, but were not limited to,

employment with Defendants based out of their New York, New York headquarters.

69.    Plaintiff specifically expressed an interest in the Chief Diversity and Inclusion

position.  However, Defendants stated that they were looking to hire an external candidate for the

position.

70.    The successful candidate Defendants ultimately hired into the role was based in

Defendants' New York, New York headquarters.

71.    On or about July 20, 2020, in a meeting with Patno and Christina Westbrooks al-Haddad, Senior Human Resources Advisor, Defendants advised Plaintiff that there was a miscommunication regarding the CVS Health/Caremark/Aetna account.  Defendants informed Plaintiff that they had hired MacDonald to manage this type of client, but that Plaintiff would lead part of the account – the Direct to Employer relationship – going forward.

72.    On or about July 27, 2020, Defendants again removed accounts from Plaintiff, which reduced her compensation and future opportunities, and assigned them to less qualified white Sales Executives.

73.    As a result of Defendants' removal of Plaintiff's accounts, Plaintiff complained of retaliation. Defendant failed to take appropriate corrective or remedial action.

74.    On or about July 30, 2020, Defendants again unjustly gave credit to MacDonald for securing the CVS Health/Caremark/Aetna account.

75.    On or about August 5, 2020, during a meeting with Patno and Westbrooks al-Haddad, Defendants issued Plaintiff an unjustified Employee Warning Letter.  The Employee Warning Letter contained false statements and misrepresentations.

76.    During the August 5, 2020 meeting, Defendants additionally informed Plaintiff that, despite previously representing that she would receive compensation for her work to date on the CVS Health/Caremark/Aetna account, Defendants would not compensate Plaintiff for the same.

77.    Following the meeting, on or about August 5, 2020, Plaintiff commenced a medical leave of absence, pursuant to the FMLA, due to the discrimination and retaliation to which Defendants had subjected her.

78.    Plaintiff suffers from anxiety and depression, both of which are disabilities under

the law.

79.     On or about November 23, 2020, Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC").

80.     Plaintiff returned from her medical leave on or about February 1, 2021.

81.     Plaintiff's medical leave was a reasonable accommodation for her disabilities.

82.     Shortly after Plaintiff returned from her medical leave, she learned that Defendants took many of her sales accounts and gave them to other white employees, which reduced Plaintiff's compensation and future opportunities. The accounts Defendants took away from Plaintiff and redistributed among other white employees included accounts based in Plaintiff's New York territory.

83.     On or about February 9, 2021, Plaintiff complained to Defendants of discrimination and retaliation regarding the same.

84.     Defendants failed to take appropriate corrective or remedial action.

85.     On or about March 12, 2021, Defendants gave Plaintiff an unjustified performance review of "Needs Improvement." This was the worst performance review that Plaintiff had received in her career with Defendants.

86.     In or about May 2021, Defendants removed the CVS Health/Caremark/Aetna from Plaintiff in its entirety.

87.     Defendants alleged that a member of the CVS Health/Caremark/Aetna account stated Plaintiff did not cater to their needs and that she was too pushy and aggressive. When Plaintiff asked for specific details of her alleged poor behavior, Defendants refused to provide Plaintiff with that information.

88.     Plaintiff never received any prior feedback from the account that she did not cater

to their needs, and her interactions and feedback with the account were positive.

89.    On or about June 8, 2021, Defendants placed Plaintiff on an unjustified Performance Improvement Plan ("PIP").

90.    On or about June 22, 2021, Plaintiff emailed Defendants a rebuttal to the allegations in the PIP. Plaintiff additionally complained that Defendants were discriminating and retaliating against Plaintiff.

91.    Defendants failed to take appropriate corrective or remedial action.  One day later, on June 23, 2021, Defendants simply informed Plaintiff that her "PIP was not issued as an act of discrimination or retaliation."

92.    In or about June 2021, Patno resigned. Plaintiff was qualified to assume his position and job duties.

93.    Defendants instead assigned his job duties to Laura Bohroquez Perez (non-African American), Director of Growth and Strategy. Plaintiff was more qualified than Bohroquez Perez to assume the Vice President of Sales position and job duties.

94.    On or about July 22, 2021, Plaintiff filed her Second PHRC Complaint.

95.    On or about August 12, 2021, Defendants terminated Plaintiff's employment, effective September 1, 2021.

96.    At the time of Plaintiff's termination, Defendants told Plaintiff she was being terminated due to her PIP.

97.    However, Defendants subsequently informed Plaintiff that she was being terminated as part of a company reorganization.

98.    Defendants' articulated reason is a pretext.

99.    At the time of Plaintiff's termination, two other employees held the position of

Sales Executive, Mark Russo (white) and Jennifer Ryan (white).

100.    Plaintiff was more qualified and experienced than both Russo and Ryan to hold the position of Sales Executive.  Yet, Defendants terminated the employment of neither individual.

101.    Additionally, right before Plaintiff's termination, Brittany Goettsch (white), Sales Executive, resigned.

102.    To Plaintiff's knowledge, Defendants were not going to terminate her employment as part of the reorganization had she not resigned.

103.    Plaintiff was more experienced and qualified than Goettsch for the position of Sales Executive.

104.    Additionally, Defendants retained MacDonald, Business Development Director, and Traci Shoemaker (white), Business Development Manager.

105.    Plaintiff was more qualified than both those individuals to perform their positions.

106.    As part of Plaintiff's compensation, she was contractually entitled to commission on sales that she generated.

107.    Following Plaintiff's notice of termination, on or about August 31, 2021, Defendants informed Plaintiff that they would not pay Plaintiff for sales commissions, some of which involved accounts based in New York and which were generated in part based upon Plaintiff's work in New York, that were owed to Plaintiff.

108.    The sales commissions that were owed to Plaintiff for which Defendants did not compensate Plaintiff, included, but were not limited to, the following accounts: Applied Medical; Campbell Hall Episcopal; Azusa Pacific University; San Mateo County Transit District; Kaiser Permanente East Bay; San Antonio Regional Hospital; Regeneron Pharmaceuticals; Robert Half;

Viacom CBS; MGA Entertainment; San Diego University Research Foundation; White Plains Hospital; State Compensation Insurance Fund; Wegmans; and Hershey.

109.    Defendants have an underrepresentation of black employees, particularly in high-level positions.

110.    Plaintiff worked in the Health Solutions Department with approximately fifty-five (55) other employees.  Plaintiff was the only African American employee in the department.

111.    Plaintiff's race was a motivating and determinative factor in Defendants' discriminatory treatment of Plaintiff, including, without limitation, failing to promote Plaintiff to the Vice President of Sales position, failing to promote Plaintiff to the director of Business Development position, failing to promote Plaintiff into any other open position for which she was qualified, removal of Plaintiff's sales accounts/territories, failure to make Plaintiff a sales liaison, removal of Plaintiff's job duties, and failure to compensate Plaintiff for sales commissions that were owed to Plaintiff.

112.    Plaintiff's race was a motivating and determinative factor in Defendants' decision to terminate Plaintiff's employment.

113.    Plaintiff's engaging in protected activity was a motivating and determinative factor in Defendants' retaliatory treatment to which Plaintiff was subjected, including, without limitation, failing to promote Plaintiff to the Vice President of Sales position, failing to promote Plaintiff to the director of Business Development position, failing to promote Plaintiff into any other available position for which she was qualified, removal of Plaintiff's sales accounts/territories, failure to make Plaintiff a sales liaison, removal of Plaintiff's job duties, failure to compensate Plaintiff for sales commissions that were owed to Plaintiff, issuing Plaintiff an employee warning letter, issuing Plaintiff negative performance review, and issuing a PIP.

114.    Plaintiff's engaging in protected activity was a motivating and determinative factor in Defendants' decision to terminate Plaintiff's employment.

115.    Plaintiff's actual and/or perceived disabilities and/or record of impairment was a motivating and determinative factor in Defendants' failure to promote plaintiff to the Vice President of Sales position, removal of Plaintiff's sales accounts/territories, and failure to compensate Plaintiff for sales commissions that were owed to Plaintiff.

116.    Plaintiff's actual and/or perceived disabilities and/or record of impairment was a motivating and determinative factor in Defendants' decision to terminate Plaintiff's employment.

117.    By terminating Plaintiff's employment after she took a leave of absence protected by the FMLA, Defendants discriminated and retaliated against Plaintiff for invoking her rights under the FMLA.

118.    Plaintiff was subjected to severe and/or pervasive conduct that interfered with her ability to perform her job duties and was not welcomed by Plaintiff, thereby creating a hostile work environment.

119.    The conduct to which Plaintiff was subjected was so severe and/or pervasive that a reasonable person in Plaintiff's position would find the work environment to be hostile and/or abusive.

120.    Defendants failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory and retaliatory conduct.

121.    The retaliatory actions taken against Plaintiff after she engaged in protected activity would have discouraged a reasonable employee from complaining of discrimination.

122.    As a direct and proximate result of the discriminatory, harassing, and retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

123.    Plaintiff has incurred and is entitled to reasonable costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

124.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the unlawful behavior complained of herein unless and until this Court grants the relief requested herein.

## **COUNT I – Title VII**

125.    Plaintiff incorporates herein by reference the paragraphs above, as if set forth herein in their entirety.

126.    By committing the foregoing acts of discrimination, harassment, and retaliation against Plaintiff, Defendants violated Title VII.

127.    Defendants acted with malice or a reckless indifference to Plaintiff's rights, thereby warranting the imposition of punitive damages.

128.    As a direct and proximate result of Defendants' violations of Title VII, Plaintiff has suffered the injuries, damages, and losses set forth herein.

## **COUNT II – Section 1981**

129.    Plaintiff incorporates herein by reference the paragraphs above, as if set forth herein in their entirety.

130.    By committing the foregoing acts of race discrimination, harassment, and retaliation, Defendants violated Section 1981.

131.    Said violations were done with malice and/or reckless indifference to Plaintiff's rights and warrant the imposition of punitive damages.

132.    As a direct and proximate result of Defendants' violation of Section 1981, Plaintiff has suffered the damages and losses set forth herein.

## COUNT III – ADA

133.    Plaintiff incorporates herein by reference the paragraphs above, as if set forth herein in their entirety.

134.    By committing the foregoing acts of discrimination, harassment, and retaliation against Plaintiff, Defendants violated the ADA.

135.    Defendants acted with malice or a reckless indifference to Plaintiff's rights, thereby warranting the imposition of punitive damages.

136.    As a direct and proximate result of Defendants' violation of the ADA, Plaintiff has suffered the injuries, damages, and losses set forth herein.

## COUNT IV – FMLA

137.    Plaintiff incorporates by reference the paragraphs above, as if set forth herein in their entirety.

138.    By committing the foregoing acts against Plaintiff, Defendants violated the FMLA.

139.    Defendants, by terminating Plaintiff after she took a protected leave of absence, discriminated and retaliated against Plaintiff and violated the FMLA.

140.    Defendants' actions were willful.

141.    The imposition of liquidated damages is warranted.

142.    As a direct and proximate result of Defendants' violations of the FMLA, Plaintiff has the suffered damages and losses set forth herein.

### COUNT V - NYSHRL

143.    Plaintiff incorporates by reference the paragraphs above, as if set forth herein in their entirety.

144.    By committing the foregoing acts of discrimination, retaliation, and harassment against Plaintiff, Defendants violated the NYSHRL.

145.    Plaintiff is entitled to punitive damages.

146.    As a direct and proximate result of Defendants' violations of the NYSHRL, Plaintiff has suffered the injuries, damages, and losses set forth herein.

### COUNT VI - NYCHRL

147.    Plaintiff incorporates herein by reference the paragraphs above, as if set forth herein in their entirety.

148.    By committing the foregoing acts of discrimination, harassment, and retaliation against Plaintiff, Defendants violated the NYCHRL.

149.    Defendants acted willfully or recklessly or with a conscious disregard of Plaintiff's rights, thereby warranting the imposition of punitive damages.

150.    As a direct and proximate result of Defendants' violations of the NYSHRL, Plaintiff has suffered the injuries, damages, and losses set forth herein.

### COUNT VII – PHRA

151.    Plaintiff incorporates herein by reference the paragraphs above, as if set forth at length herein.

152.    By committing the foregoing acts of discrimination, harassment, and retaliation against Plaintiff, Defendants violated the PHRA.

153.    As a direct and proximate result of Defendants' violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein.

## COUNT VIII –Violation of the WPCL

154.    Plaintiff incorporates by reference the paragraphs above as though set forth herein in their entirety.

155.    The commissions which Plaintiff is owed constitute "wages" under the WPCL.

156.    The commissions which Plaintiff is owed are earnings of Plaintiff.

157.    Defendants violated the WPCL because Plaintiff did not receive the commissions owed to her.

158.    Plaintiff is entitled to recover liquidated damages against Defendants in an amount equal to twenty-five percent (25%) of the commissions owed to her.

159.    No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)    declaring the acts and practices complained of herein to be in violation of Title VII;

(b)    declaring the acts and practices complained of herein to be in violation of Section 1981;

(c)    declaring the acts and practices complained of herein to be in violation of

Section ADA;

(d)    declaring the acts and practices complained of herein to be in violation of the FMLA;

(e)    declaring the acts and practices complained of herein to be in violation of the NYSHRL;

(f)    declaring the acts and practices complained of herein to be in violation of the NYCHRL;

(g)    declaring the acts and practices complained of herein to be in violation of the PHRA;

(h)    declaring the acts and practices complained of herein to be in violation of the WPCL;

(j)    enjoining and permanently restraining the violations alleged herein;

(k)    entering judgment against Defendants and in favor of the Plaintiff in an amount to be determined;

(l)    awarding Plaintiff back pay and front pay;

(m)    awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(n)    awarding Plaintiff all sales commissions owed to her;

(o)    awarding Plaintiff liquidated damages;

(p)    awarding Plaintiff punitive damages;

(q)    awarding Plaintiff interest;

(r)     awarding Plaintiff such other damages as are appropriate under Title VII, Section 1981, the ADA, FMLA, NYSHRL, NYCHRL, PHRA, and the WPCL;

(s)     awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorney's fees; and,

(t)     granting such other and further relief as this Court may deem just, proper, or equitable.

**CONSOLE MATTIACCI LAW, LLC**

Dated: June 30, 2022            BY:    _____

Stephen G. Console
Lane Schiff
1525 Locust St., 9th Floor
Philadelphia, PA 19102
(215) 545-7676

Attorneys for Plaintiff,
Marian "Josie" Washington-McQuay

# EXHIBIT 1

```
┌─────────────────────────────────────┐
│            Received                  │
│                                      │
│          NOV 23 2020                 │
│                                      │
│  PA Human Relations Commission       │
│   Philadelphia Regional Office       │
└─────────────────────────────────────┘
```

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

### COMPLAINT

COMPLAINANT:                                :

MARIAN "JOSIE" WASHINGTON-MCQUAY :                     Docket No.    202001293

v.                                          :

RESPONDENTS:                                :

WW HEALTH SOLUTIONS                         :

and                                         :

WW NORTH AMERICA HOLDINGS, INC.             :

and                                         :

WEIGHT WATCHERS                             :
INTERNATIONAL, INC                          :

1.  The Complainant herein is:

    Name:    Marian "Josie" Washington-McQuay

    Address:    **REDACTED**
                West Chester, PA 19382

2.  The Respondents herein are:

    Names:    WW Health Solutions; WW North America Holdings, Inc.; Weight
              Watchers International, Inc.

    Address:    675 Sixth Avenue, 6th Floor
                New York, NY 10010

To 12155603882                Page: 04 of 17                2020-11-23 16:57:30 EST                12155652858                From: Nancy Glace

3. I, <u>Marian "Josie" Washington-McQuay</u>, the Complainant herein, allege that I was subjected to unlawful discrimination because of my race (black), and unlawful retaliation because of my complaints of race discrimination, as set forth below.

### Discrimination and Retaliation

#### A. I specifically allege:

[1] I was hired by Respondents in or about June 2016.

[2] I am a current employee of Respondents.

[3] I have consistently performed my job duties in a highly competent manner, and have received positive feedback and performance reviews.

[4] I hold the position of Sales Executive / Strategic Sales Manager.

[5] I work out of my home office in Pennsylvania.

[6] I report to Timothy Patno (white), Vice President of Sales. Patno reports to Chere Scythes (white), Senior Vice President and General Manager.

[7] Before reporting to Patno, I reported to Will Harbour (white), National Sales Manager.

[8] I was the only black employee in my department.

[9] On or about February 7, 2018, in a meeting with Harbour and Gary Foster (white), Chief Clinical Officer, Respondents removed approximately sixty-two (62) accounts from my territory, which would reduce my compensation and future opportunities.

[10] I was the only employee reporting to Harbour who had accounts removed, and the only black employee, out of four (4) employees, who was reporting to Harbour. Respondents did not remove accounts from any of Harbour's other three (3) direct reports—all of whom were white.

[11]    In or about October 2018, I began indirectly reporting to Scythes.

[12]    In or about March 2019, when Harbour separated from Respondents, the position of National Sales Manager that he had held was changed to a Vice President of Sales position, which was a newly created position.

[13]    I repeatedly expressed my interest in the Vice President of Sales position. I was qualified for the position.

[14]    On or about April 26, 2019, I was appointed to the Interim Vice President of Sales position. I directly reported to Scythes in this position.

[15]    I was not aware of any employee at Respondents who was not placed in the open/permanent position after holding an interim position.

[16]    On August 2, 2019, Respondents failed to promote me to the Vice President of Sales position. Instead of promoting me, Respondents selected Patno (white), an external candidate with little to no experience in the healthcare field, for the Vice President of Sales position. I was more qualified for the Vice President of Sales position than the white external candidate who was hired for the position. I was assigned to report to Patno.

[17]    On or about August 2, 2019, I began reporting to Patno.

[18]    I trained Patno for the Vice President of Sales position.

[19]    I am the only black employee reporting to Patno.

[20]    I am the only black employee out of approximately fifty-five (55) employees in my department.

[21]    Respondents have an underrepresentation of black employees, particularly in high-level positions.

[22]     In addition to me, the following employees directly report to Patno. I am more qualified to perform each of these employee's positions.

> (a) Brittany Goettsch (white), Sales Executive;
>
> (b) Meagan Voight (white), Sales Executive / Strategic Sales Manager;
>
> (c) Mark Russo (white), Sales Executive;
>
> (d) Jennifer McTigue (white), Regional Sales Manager;
>
> (e) Laura MacDonald (white), Director of Business Development.

[23]     Respondents have treated me differently and worse, and in a more hostile and dismissive manner, than they have treated white employees.

[24]     On September 4, 2019, in a meeting with Foster, John Birnhak (white), Philadelphia Franchise Owner, Michelle Mendoza (white/Hispanic), Vice President of Field Operations, Joyce Johnson (black), At Work Representative, and several other white employees, I gave a presentation on a new franchise payment model that I had created. During the meeting, after I addressed and answered questions on my presentation, Birnhak looked at Foster and instructed Johason (black) and me to leave the meeting. Birnhak stated that they had other things to discuss. When I returned to the meeting, the meeting had ended.

[25]     On September 4, 2019, following the above meeting, I complained to Mendoza that Johnson and I were the only black employees in the meeting and the only employees that were asked to leave the meeting.

[26]     In or about September 2019, Respondents hired Megan Voight (white), Sales Executive / Strategic Sales Manager.

[27]       In or about September 2019, Respondents removed from me a portion of my accounts, which reduced my compensation and future opportunities, and assigned them to Voight. I was more qualified to handle the accounts than the white employee to whom they were assigned.

[28]       In or about October 2019, after I had expressed interest in being the Sales liaison for Respondents' franchise partners and training the franchise teams, I learned that this responsibility was assigned to McTigue (white), instead of me. I was more qualified to handle the responsibility than the white employee to whom it was assigned.

[29]       On October 14, 2019, Respondents failed to promote me to a newly created Director of Business Development position. I was qualified for the position. Instead of promoting me, Respondents hired MacDonald (white) for the position. I had no opportunity to apply for the position because it was not posted. If the position were posted, I would have applied for it. I was more qualified for the position than the white employee who was hired.

[30]       Respondents removed certain job duties and responsibilities from me and assigned them to MacDonald (white). The stated reason was that MacDonald was a better fit for the job duties and responsibilities. I was more qualified to perform my job duties and responsibilities than the white employee to whom they were assigned.

[31]       On October 22, 2019, during Respondents' National Meeting, Sales Breakout, Patno instructed McTigue (white) to oversee the meeting instead of me.

[32]       On December 11, 2019, Tess Martel (white). Strategic Sales Manager, told me that I was the only Strategic Sales Manager who was not invited or on the list to attend the Oprah Tour events. I was the only black Sales Manager. The employees on the list to attend the

event included the following. I was more qualified to attend the event than the employees who were on the list to attend.

      1. Tess Martel (white), Strategic Sales Manager;

      2. Meagan Voight (white), Strategic Sales Manager;

      3. AJ Grant (white), Strategic Sales Manager;

      4. Jennifer McTigue (white), Regional Sales Manager;

      5. Laura MacDonald (white), Director of Business Development.

[33]     On December 12, 2019, in a meeting with Patno, I asked why I was not on the list to attend the Oprah Tour event in New York, especially because the event was being held in my territory and many of my clients would be attending. Patno told me that there were no seats left for the event.

[34]     On December 13, 2019, Patno told me that I was not invited to attend a meeting with one of my largest clients, and that he and Scythes would attend instead.

[35]     I repeatedly expressed my interested in being promoted. Patno told me that I had to earn it.

[36]     For 2019, met my sales revenue target for the third consecutive year.

[37]     In or about January 2020, when Patno announced a territory realignment, I was the only Sales Manager who had accounts and states removed from me. The accounts and states removed from me were assigned to Voight (white). I was more qualified to handle the accounts and states than the white employee to whom they were assigned.

[38]     On January 9, 2020, Patno told me that I could attend the Oprah Tour event in New York if, within forty-eight (48) hours, I secured another client to attend with me.

To 12155603882          Page: 09 of 17          2020-11-23 16:57:30 EST          12155652858          From: Nancy Glace

[39]       On or about February 4, 2020, I secured a significant account: the CVS
Health/Caremark/Aetna account.

[40]       On February 25, 2020, in a phone call with Patno, Scythes, MacDonald.
and Joanna Strober (white), Executive Investor, they told me that the CVS
Health/Caremark/Aetna account that I had secured was being taken away from me and given to
MacDonald (white). I was more qualified to handle the CVS Health/Caremark/Aetna account
that I had secured than the white employee to whom it was assigned.

[41]       On or about April 13, 2020, Respondents hired Russo (white), whom I
was instructed to train.

[42]       In or about April 2020, Kelly Serwer (white), Client Success Executive,
was asked to give a presentation to Respondents' Health Solutions department instead of me. I
was more qualified to give the presentation than the white employee who was asked to give the
presentation.

[43]       On June 3, 2020, Respondents unjustly gave credit to MacDonald (white)
for the CVS Health/Caremark/Aetna account I secured that Respondents removed from me and
assigned to MacDonald.

[44]       On June 5, 2020, on a conference call with Kimberly Seymour (black),
Senior Vice President, Corporate Human Resources, and approximately thirty (30) other
employees, we discussed recent protests in connection with the Black Lives Matter movement. I
complained about the lack of career advancement opportunities at Respondents for black
employees. I stated that Respondents needed to hold diversity training and develop
accountability for race discrimination. I stated that there were no black employees on

To 12155603682          Page: 10 of 17          2020-11-23 16:57:30 EST          12155652858          From: Nancy Glace

Respondents' science team, and suggested that Respondents build a relationship with the Association of Black Cardiologists.

[45]    On June 5, 2020, in a phone call with Seymour, following the above conference call, I complained of race discrimination. I complained that, as a black employee, I was treated worse and had fewer career advancement opportunities than white employees. I complained that Respondents removed the CVS Health/Caremark/Aetna account from me, that I had secured, and gave it to a white employee. I complained that, as a black employee, I lacked visibility and opportunities. I expressed my interest in and qualifications for a Chief Diversity and Inclusion position. Seymour stated that she was looking to hire an external candidate for a Diversity and Inclusion position.

[46]    On June 11, 2020, in a phone call with Scythes, I complained of race discrimination, including that the CVS Health/Caremark/Aetna account that I had secured was taken away from me and given to MacDonald, who was receiving the credit and compensation for it. I complained of the lack of career advancement opportunities and visibility for black employees at Respondents. I stated that I had repeatedly expressed interest in being promoted but had not been.

[47]    On June 15, 2020, in a phone call with Christina Westbrooks al-Haddad (black), Senior Human Resources Advisor, I complained of the lack of career advancement opportunities and visibility for black employees at Respondents. I stated that I had repeatedly expressed interest in being promoted but had not been. I expressed my interest in and qualifications for a Chief Diversity and Inclusion position. Westbrooks instructed me to discuss my career advancement ideas with Patno.

[48]    On June 18, 2020, in a meeting with Scythes, I asked why the CVS Health/Caremark/Aetna account that I had secured was taken away from me, why I did not get the credit and compensation for securing the CVS Health/Caremark/Aetna account, and why I was being overlooked for career advancement and project opportunities. I complained of the lack of career advancement opportunities and visibility for black employees at Respondents. I stated that I had repeatedly expressed interest in being promoted but had not been. I stated that I was qualified for many positions and responsibilities at Respondents, and stated that I did not have the opportunity to apply for the newly created Director of Business Development position because it was not posted. Scythes agreed that I was qualified for positions, including the Director of Business Development position, and career advancement opportunities, but stated that Respondents wanted to hire MacDonald (white) for the Director of Business Development position and that it was "all about the perception of [me]." Scythes unjustly criticized my performance, including raising alleged issues from 2018 and 2019 and telling me that employees were complaining that I was condescending when training them.

[49]    On June 22, 2020, in a phone call with Westbrooks al-Haddad, I complained of race discrimination, including that the CVS Health/Caremark/Aetna account that I had secured was taken away from me and given to MacDonald, who was receiving the credit and compensation for it. Westbrooks al-Haddad confirmed that the Director of Business Development position was not posted, and that Respondents wanted MacDonald in the position.

[50]    On June 23, 2020, in a phone call with Patno, he told me that I would receive credit and be compensated for securing the CVS Health/Caremark/Aetna account.

[51]    I did not receive any credit or compensation for securing the CVS Health/Caremark/Aetna account.

[52]        On or about June 29, 2020, Respondents hired Brittany Goettsch (white),
Sales Executive, whom I was asked to train.

[53]        On June 29, 2020, in a phone call with Seymour, I complained of race
discrimination, including that the CVS Health/Caremark/Aetna account that I had secured was
removed from me and assigned to MacDonald, that MacDonald was being given the credit and
compensation for the account instead of me, and that I had not been given opportunities for
promotion and career advancement. Seymour told me that she would send an email to
Respondents' Executive Committee regarding my complaints, and that she would do an
investigation.

[54]        On June 30, 2020, following a phone call with Westbrooks al-Haddad, I
emailed to her documentation and communication related to significant accounts I secured that
were taken away from me.

[55]        On July 1, 2020, in a meeting with Westbrooks al-Haddad, we discussed
the documentation and communication that I had sent to her, and she agreed to be present in
future meetings and calls with Patno and Scythes.

[56]        On July 20, 2020, in a meeting with Patno and Westbrooks al-Haddad,
they stated that there was miscommunication regarding the CVS Health/Caremark/Aetna account
I had secured, and that Respondents had hired MacDonald to manage this type of account. I
complained of race discrimination, including that I had not been given opportunities for
promotion and career advancement or the opportunity to apply or interview for the Director of
Business Development position since it was not posted. Westbrook al-Haddad confirmed that
the Director of Business Development position was not posted, and requested that Patno discuss

opportunities with me. Patno stated that he did not foresee any new positions for me in the future.

[57]    On or about July 27, 2020, Respondents removed accounts from me and assigned them to white employees. I was more qualified to handle the accounts than the white employees to whom they were assigned. Patno told me that I could not take scheduled, paid time off unless I turned over the accounts that were being removed from me.

[58]    On July 27, 2020, in an email to Patno, I complained of retaliation, stating that I was the only employee who had accounts removed and reassigned to others, and that this was impacting my future goals and bonus potential.

[59]    On July 28, 2020, in an email to Patno, I stated that I wanted to have Westbrooks al-Haddad on my next phone call with Patno, as I wanted to discuss my concerns and ongoing experiences with discrimination and retaliation at Respondents.

[60]    On July 29, 2020, in an email to Patno and Westbrooks al-Haddad, I stated that I wanted to schedule a meeting to discuss my compensation for the CVS Health/Caremark/Aetna account I secured that Respondents removed from me and assigned to MacDonald, as Patno had previously told me that I would be compensated for it.

[61]    Westbrooks al-Haddad told me that they would discuss and get back to me.

[62]    On July 30, 2020, Respondents unjustly gave credit to MacDonald (white) for the CVS Health/Caremark/Aetna account I secured that Respondents removed from me and assigned to MacDonald.

[63]    On August 5, 2020, in a Zoom meeting with Patno and Westbrooks al-Haddad, Respondents issued to me an Employee Warning Letter. My performance did not

warrant an Employee Warning Letter. The Employee Warning Letter contained false statements and misrepresentations. My performance was unjustly criticized, and I was told that I would not be compensated for the CVS Health/Caremark/Aetna account I had secured that was removed from me and given to MacDonald.

[64]     On August 5, 2020, following the above meeting, I went out of work on a medical leave of absence due to the race- and retaliatory-based hostile work environment to which I have been subjected.

[65]     Respondents have been trying to push me out because of my race and/or race discrimination complaints.

[66]     Respondents failed to compensate me for the CVS Health/Caremark/Aetna account I secured because of my race and/or race discrimination complaints.

[67]     Respondents removed accounts from me, which impacted my compensation and future opportunities, because of my race and/or race discrimination complaints.

[68]     Respondents failed to promote me because of my race and/or race discrimination complaints.

[69]     Respondents subjected me to a hostile work environment because of my race and/or race discrimination complaints.

[70]     Before I complained of race discrimination, I had no performance issues throughout my employment with Respondents.

[71]     Respondents' race discriminatory and retaliatory conduct toward me has caused me emotional distress.

[72]     I bring this Complaint as a class and pattern and practice Complaint on behalf of myself and any and all current or former employees of Respondents who are black, and who have been discriminated against based on race in connection with hiring, promotion, demotion, compensation, being subjected to a hostile work environment, position selection, and termination.

**B.** Based on the aforementioned, I allege that Respondents have discriminated against me because of my race (black), and retaliated against me because of my race discrimination complaints, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

4.     The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

     **_X_**    **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):**   **(a); (d)**

    _____    Section 5.1 Subsection(s) _____

    _____    Section 5.2 Subsection(s) _____

    _____    Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766. as amended) Section 4 Subsection(s) _____

5.     Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

    __X__      This charge will be referred to the EEOC for the purpose of dual filing.

6.    The Complainant seeks that Respondents be required to:

    (a) Make the Complainant whole.

    (b) Eliminate all unlawful discriminatory practice(s) and procedure(s).

    (c) Remedy the discriminatory effect of past practice(s) and procedure(s).

    (d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

    (e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

11/23/2020
(Date Signed)

Marian T Washington McQuay
(Signature)    Marian "Josie" Washington-McQuay
REDACTED
West Chester, PA 19382

# EXHIBIT 2

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## SECOND COMPLAINT

| | |
|---|---|
| COMPLAINANT: | DOCKET No. |
| **MARIAN "JOSIE" WASHINGTON-MCQUAY** | |
| v. | |
| RESPONDENTS: | |
| **WW HEALTH SOLUTIONS** | |
| and | |
| **WW NORTH AMERICA HOLDINGS, INC.** | |
| and | |
| **WW INTERNATIONAL, INC F/K/A WEIGHT WATCHERS INTERNATIONAL, INC.** | |

1. The Complainant herein is:

   Name:      Marian "Josie" Washington-McQuay

   Address:   **REDACTED**
              West Chester, PA 19382

2. The Respondents herein are:

   Names:     WW Health Solutions; WW North America Holdings, Inc.; WW
              International, Inc. f/k/a Weight Watchers International, Inc.

   Address:   675 Sixth Avenue, 6th Floor
              New York, NY 10010

3.  I, Marian "Josie" Washington-McQuay, the Complainant herein, allege that I was subjected to unlawful discrimination because of my race (black) and actual and/or perceived disabilities and/or record of impairment (Anxiety and Depression), and unlawful retaliation because of my complaints of discrimination and/or for requesting an accommodation, as set forth below.

**Discrimination and Retaliation**

**A. I specifically allege, in addition to that set forth in my first Complaint (which is attached hereto as Exhibit A and incorporated herein by reference), including, but not limited, the following, all of which has occurred since my first Complaint:**

[1]      Respondents' unlawful actions caused me to suffer from Anxiety and Depression, both of which are disabilities under the law.

[2]      I returned from my medical leave on or about February 1, 2021.

[3]      My medical leave was a reasonable accommodation for my disabilities.

[4]      Shortly after I returned from my medical leave, I learned that numerous of my sales accounts were taken from me and given to other white employees.

[5]      On or about March 12, 2021, Respondents gave me an unjustified performance review of "Needs Improvement." This was the worst performance review that I have received in my career with Respondents.

[6]      In or about May 2021, Respondents removed from me one of my largest accounts, CVS Health/Caremark/Aetna.  Respondents stated that a member of the account allegedly said that I did not cater to their needs and that I was too pushy and aggressive.

[7]     When I asked for specific details of my alleged poor behavior, Respondents refused to provide me with that information.

[8]     I never received any prior feedback from the account that I did not cater to their needs, and my interactions and feedback with the account were positive.

[9]     On or about June 8, 2021, Respondents placed me on an unjustified Performance Improvement Plan ("PIP").

[10]    On or about June 22, 2021, I sent Respondents an email rebutting the allegations in the PIP. I also complained that Respondents were discriminating and retaliating against me.

[11]    One day later, on June 23, 2021, Respondent informed me that my "PIP was not issued as an act of discrimination or retaliation."

[12]    Respondents did not investigate or take any corrective actions regarding my complaint.

[13]    Respondents have discriminated against me because of my race and my actual and/or perceived disabilities and/or record of impairment and have subjected me to retaliation, as articulated herein.

[14]    Respondents subjected me to a discriminatory and retaliatory hostile work environment, as articulated herein.

[15]    Respondents' discriminatory and retaliatory conduct toward me has caused me emotional distress.

[16]    **I bring this Complaint as a class and pattern and practice Complaint on behalf of myself and any and all current or former employees of Respondents who are black, and who have been discriminated against based on race in connection with hiring,**

**promotion, demotion, compensation, being subjected to a hostile work environment, position selection, and termination.**

B. Based on the aforementioned, I allege that Respondents have discriminated against me because of my race and because of my actual and/or perceived disabilities and/or record of impairment, and retaliated against me for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

4.      The allegations in Paragraph 3 hereof constitute unlawful discriminatory and retaliatory practices in violation of:

    **X**    **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s): (a); (d)**

    _____    Section 5.1 Subsection(s) _____

    _____    Section 5.2 Subsection(s) _____

    _____    Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961,

P.L. 766, as amended) Section 4 Subsection(s) _____

5.      Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

    **X**    **This charge will be referred to the EEOC for the purpose of dual filing.**

6.      The Complainant seeks that Respondents be required to:

(a) Make the Complainant whole;

(b) Provide Complainant with back pay and front pay;

(c) Provide Complainant with all other economic losses;

(d) Provide Complainant with compensatory damages for emotional harm;

(e) Provide Complainant with punitive damages;

(f) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s);

(g) Remedy the discriminatory and retaliatory effect of past practice(s) and procedure(s);

(h) Take further affirmative action necessary and appropriate to remedy the violations complained of herein; and

(i) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this Second Complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

7/22/2021
(Date Signed)

*Marian J. Washington-McQuay*
(Signature)    Marian "Josie" Washington-McQuay
REDACTED
West Chester, PA 19382

# EXHIBIT A

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## **COMPLAINT**

COMPLAINANT:                                          :

**MARIAN "JOSIE" WASHINGTON-MCQUAY** :          Docket No.

v.                                                   :

RESPONDENTS:                                         :

**WW HEALTH SOLUTIONS**                             :

and                                                  :

**WW NORTH AMERICA HOLDINGS, INC.**                 :

and                                                  :

**WEIGHT WATCHERS**
**INTERNATIONAL, INC**                              :

1. The Complainant herein is:

   Name:        Marian "Josie" Washington-McQuay

   Address:     REDACTED
                West Chester, PA 19382

2. The Respondents herein are:

   Names:       WW Health Solutions; WW North America Holdings, Inc.; Weight
                Watchers International, Inc.

   Address:     675 Sixth Avenue, 6th Floor
                New York, NY 10010

3. I, Marian "Josie" Washington-McQuay, the Complainant herein, allege that I was subjected to unlawful discrimination because of my race (black), and unlawful retaliation because of my complaints of race discrimination, as set forth below.

### Discrimination and Retaliation

#### A. I specifically allege:

[1]     I was hired by Respondents in or about June 2016.

[2]     I am a current employee of Respondents.

[3]     I have consistently performed my job duties in a highly competent manner, and have received positive feedback and performance reviews.

[4]     I hold the position of Sales Executive / Strategic Sales Manager.

[5]     I work out of my home office in Pennsylvania.

[6]     I report to Timothy Patno (white), Vice President of Sales. Patno reports to Chere Scythes (white), Senior Vice President and General Manager.

[7]     Before reporting to Patno, I reported to Will Harbour (white), National Sales Manager.

[8]     I was the only black employee in my department.

[9]     On or about February 7, 2018, in a meeting with Harbour and Gary Foster (white), Chief Clinical Officer, Respondents removed approximately sixty-two (62) accounts from my territory, which would reduce my compensation and future opportunities.

[10]     I was the only employee reporting to Harbour who had accounts removed, and the only black employee, out of four (4) employees, who was reporting to Harbour. Respondents did not remove accounts from any of Harbour's other three (3) direct reports—all of whom were white.

[11]       In or about October 2018, I began indirectly reporting to Scythes.

[12]       In or about March 2019, when Harbour separated from Respondents, the position of National Sales Manager that he had held was changed to a Vice President of Sales position, which was a newly created position.

[13]       I repeatedly expressed my interest in the Vice President of Sales position. I was qualified for the position.

[14]       On or about April 26, 2019, I was appointed to the Interim Vice President of Sales position. I directly reported to Scythes in this position.

[15]       I was not aware of any employee at Respondents who was not placed in the open/permanent position after holding an interim position.

[16]       On August 2, 2019, Respondents failed to promote me to the Vice President of Sales position. Instead of promoting me, Respondents selected Patno (white), an external candidate with little to no experience in the healthcare field, for the Vice President of Sales position. I was more qualified for the Vice President of Sales position than the white external candidate who was hired for the position. I was assigned to report to Patno.

[17]       On or about August 2, 2019, I began reporting to Patno.

[18]       I trained Patno for the Vice President of Sales position.

[19]       I am the only black employee reporting to Patno.

[20]       I am the only black employee out of approximately fifty-five (55) employees in my department.

[21]       Respondents have an underrepresentation of black employees, particularly in high-level positions.

[22]     In addition to me, the following employees directly report to Patno. I am more qualified to perform each of these employee's positions.

(a) Brittany Goettsch (white), Sales Executive;

(b) Meagan Voight (white), Sales Executive / Strategic Sales Manager;

(c) Mark Russo (white), Sales Executive;

(d) Jennifer McTigue (white), Regional Sales Manager;

(e) Laura MacDonald (white), Director of Business Development.

[23]     Respondents have treated me differently and worse, and in a more hostile and dismissive manner, than they have treated white employees.

[24]     On September 4, 2019, in a meeting with Foster, John Birnhak (white), Philadelphia Franchise Owner, Michelle Mendoza (white/Hispanic), Vice President of Field Operations, Joyce Johnson (black), At Work Representative, and several other white employees, I gave a presentation on a new franchise payment model that I had created. During the meeting, after I addressed and answered questions on my presentation, Birnhak looked at Foster and instructed Johnson (black) and me to leave the meeting. Birnhak stated that they had other things to discuss. When I returned to the meeting, the meeting had ended.

[25]     On September 4, 2019, following the above meeting, I complained to Mendoza that Johnson and I were the only black employees in the meeting and the only employees that were asked to leave the meeting.

[26]     In or about September 2019, Respondents hired Megan Voight (white), Sales Executive / Strategic Sales Manager.

[27]     In or about September 2019, Respondents removed from me a portion of my accounts, which reduced my compensation and future opportunities, and assigned them to Voight. I was more qualified to handle the accounts than the white employee to whom they were assigned.

[28]     In or about October 2019, after I had expressed interest in being the Sales liaison for Respondents' franchise partners and training the franchise teams, I learned that this responsibility was assigned to McTigue (white), instead of me. I was more qualified to handle the responsibility than the white employee to whom it was assigned.

[29]     On October 14, 2019, Respondents failed to promote me to a newly created Director of Business Development position. I was qualified for the position. Instead of promoting me, Respondents hired MacDonald (white) for the position. I had no opportunity to apply for the position because it was not posted. If the position were posted, I would have applied for it. I was more qualified for the position than the white employee who was hired.

[30]     Respondents removed certain job duties and responsibilities from me and assigned them to MacDonald (white). The stated reason was that MacDonald was a better fit for the job duties and responsibilities. I was more qualified to perform my job duties and responsibilities than the white employee to whom they were assigned.

[31]     On October 22, 2019, during Respondents' National Meeting, Sales Breakout, Patno instructed McTigue (white) to oversee the meeting instead of me.

[32]     On December 11, 2019, Tess Martel (white), Strategic Sales Manager, told me that I was the only Strategic Sales Manager who was not invited or on the list to attend the Oprah Tour events. I was the only black Sales Manager. The employees on the list to attend the

event included the following. I was more qualified to attend the event than the employees who were on the list to attend.

1.  Tess Martel (white), Strategic Sales Manager;

2.  Meagan Voight (white), Strategic Sales Manager;

3.  AJ Grant (white), Strategic Sales Manager;

4.  Jennifer McTigue (white), Regional Sales Manager;

5.  Laura MacDonald (white), Director of Business Development.

[33]    On December 12, 2019, in a meeting with Patno, I asked why I was not on the list to attend the Oprah Tour event in New York, especially because the event was being held in my territory and many of my clients would be attending. Patno told me that there were no seats left for the event.

[34]    On December 13, 2019, Patno told me that I was not invited to attend a meeting with one of my largest clients, and that he and Scythes would attend instead.

[35]    I repeatedly expressed my interested in being promoted. Patno told me that I had to earn it.

[36]    For 2019, met my sales revenue target for the third consecutive year.

[37]    In or about January 2020, when Patno announced a territory realignment, I was the only Sales Manager who had accounts and states removed from me. The accounts and states removed from me were assigned to Voight (white). I was more qualified to handle the accounts and states than the white employee to whom they were assigned.

[38]    On January 9, 2020, Patno told me that I could attend the Oprah Tour event in New York if, within forty-eight (48) hours, I secured another client to attend with me.

[39]     On or about February 4, 2020, I secured a significant account: the CVS Health/Caremark/Aetna account.

[40]     On February 25, 2020, in a phone call with Patno, Scythes, MacDonald, and Joanna Strober (white), Executive Investor, they told me that the CVS Health/Caremark/Aetna account that I had secured was being taken away from me and given to MacDonald (white). I was more qualified to handle the CVS Health/Caremark/Aetna account that I had secured than the white employee to whom it was assigned.

[41]     On or about April 13, 2020, Respondents hired Russo (white), whom I was instructed to train.

[42]     In or about April 2020, Kelly Serwer (white), Client Success Executive, was asked to give a presentation to Respondents' Health Solutions department instead of me. I was more qualified to give the presentation than the white employee who was asked to give the presentation.

[43]     On June 3, 2020, Respondents unjustly gave credit to MacDonald (white) for the CVS Health/Caremark/Aetna account I secured that Respondents removed from me and assigned to MacDonald.

[44]     On June 5, 2020, on a conference call with Kimberly Seymour (black), Senior Vice President, Corporate Human Resources, and approximately thirty (30) other employees, we discussed recent protests in connection with the Black Lives Matter movement. I complained about the lack of career advancement opportunities at Respondents for black employees. I stated that Respondents needed to hold diversity training and develop accountability for race discrimination. I stated that there were no black employees on

Respondents' science team, and suggested that Respondents build a relationship with the Association of Black Cardiologists.

[45]    On June 5, 2020, in a phone call with Seymour, following the above conference call, I complained of race discrimination. I complained that, as a black employee, I was treated worse and had fewer career advancement opportunities than white employees. I complained that Respondents removed the CVS Health/Caremark/Actna account from me, that I had secured, and gave it to a white employee. I complained that, as a black employee, I lacked visibility and opportunities. I expressed my interest in and qualifications for a Chief Diversity and Inclusion position. Seymour stated that she was looking to hire an external candidate for a Diversity and Inclusion position.

[46]    On June 11, 2020, in a phone call with Scythes, I complained of race discrimination, including that the CVS Health/Caremark/Aetna account that I had secured was taken away from me and given to MacDonald, who was receiving the credit and compensation for it. I complained of the lack of career advancement opportunities and visibility for black employees at Respondents. I stated that I had repeatedly expressed interest in being promoted but had not been.

[47]    On June 15, 2020, in a phone call with Christina Westbrooks al-Haddad (black), Senior Human Resources Advisor, I complained of the lack of career advancement opportunities and visibility for black employees at Respondents. I stated that I had repeatedly expressed interest in being promoted but had not been. I expressed my interest in and qualifications for a Chief Diversity and Inclusion position. Westbrooks instructed me to discuss my career advancement ideas with Patno.

[48]     On June 18, 2020, in a meeting with Scythes, I asked why the CVS Health/Caremark/Aetna account that I had secured was taken away from me, why I did not get the credit and compensation for securing the CVS Health/Caremark/Aetna account, and why I was being overlooked for career advancement and project opportunities. I complained of the lack of career advancement opportunities and visibility for black employees at Respondents. I stated that I had repeatedly expressed interest in being promoted but had not been. I stated that I was qualified for many positions and responsibilities at Respondents, and stated that I did not have the opportunity to apply for the newly created Director of Business Development position because it was not posted. Scythes agreed that I was qualified for positions, including the Director of Business Development position, and career advancement opportunities, but stated that Respondents wanted to hire MacDonald (white) for the Director of Business Development position and that it was "all about the perception of [me]." Scythes unjustly criticized my performance, including raising alleged issues from 2018 and 2019 and telling me that employees were complaining that I was condescending when training them.

[49]     On June 22, 2020, in a phone call with Westbrooks al-Haddad, I complained of race discrimination, including that the CVS Health/Caremark/Aetna account that I had secured was taken away from me and given to MacDonald, who was receiving the credit and compensation for it. Westbrooks al-Haddad confirmed that the Director of Business Development position was not posted, and that Respondents wanted MacDonald in the position.

[50]     On June 23, 2020, in a phone call with Patno, he told me that I would receive credit and be compensated for securing the CVS Health/Caremark/Aetna account.

[51]     I did not receive any credit or compensation for securing the CVS Health/Caremark/Aetna account.

[52]     On or about June 29, 2020, Respondents hired Brittany Goettsch (white), Sales Executive, whom I was asked to train.

[53]     On June 29, 2020, in a phone call with Seymour, I complained of race discrimination, including that the CVS Health/Caremark/Aetna account that I had secured was removed from me and assigned to MacDonald, that MacDonald was being given the credit and compensation for the account instead of me, and that I had not been given opportunities for promotion and career advancement. Seymour told me that she would send an email to Respondents' Executive Committee regarding my complaints, and that she would do an investigation.

[54]     On June 30, 2020, following a phone call with Westbrooks al-Haddad, I emailed to her documentation and communication related to significant accounts I secured that were taken away from me.

[55]     On July 1, 2020, in a meeting with Westbrooks al-Haddad, we discussed the documentation and communication that I had sent to her, and she agreed to be present in future meetings and calls with Patno and Scythes.

[56]     On July 20, 2020, in a meeting with Patno and Westbrooks al-Haddad, they stated that there was miscommunication regarding the CVS Health/Caremark/Aetna account I had secured, and that Respondents had hired MacDonald to manage this type of account. I complained of race discrimination, including that I had not been given opportunities for promotion and career advancement or the opportunity to apply or interview for the Director of Business Development position since it was not posted. Westbrook al-Haddad confirmed that the Director of Business Development position was not posted, and requested that Patno discuss

opportunities with me. Patno stated that he did not foresee any new positions for me in the future.

[57]     On or about July 27, 2020, Respondents removed accounts from me and assigned them to white employees. I was more qualified to handle the accounts than the white employees to whom they were assigned. Patno told me that I could not take scheduled, paid time off unless I turned over the accounts that were being removed from me.

[58]     On July 27, 2020, in an email to Patno, I complained of retaliation, stating that I was the only employee who had accounts removed and reassigned to others, and that this was impacting my future goals and bonus potential.

[59]     On July 28, 2020, in an email to Patno, I stated that I wanted to have Westbrooks al-Haddad on my next phone call with Patno, as I wanted to discuss my concerns and ongoing experiences with discrimination and retaliation at Respondents.

[60]     On July 29, 2020, in an email to Patno and Westbrooks al-Haddad, I stated that I wanted to schedule a meeting to discuss my compensation for the CVS Health/Caremark/Aetna account I secured that Respondents removed from me and assigned to MacDonald, as Patno had previously told me that I would be compensated for it.

[61]     Westbrooks al-Haddad told me that they would discuss and get back to me.

[62]     On July 30, 2020, Respondents unjustly gave credit to MacDonald (white) for the CVS Health/Caremark/Aetna account I secured that Respondents removed from me and assigned to MacDonald.

[63]     On August 5, 2020, in a Zoom meeting with Patno and Westbrooks al-Haddad, Respondents issued to me an Employee Warning Letter. My performance did not

warrant an Employee Warning Letter. The Employee Warning Letter contained false statements and misrepresentations. My performance was unjustly criticized, and I was told that I would not be compensated for the CVS Health/Caremark/Aetna account I had secured that was removed from me and given to MacDonald.

[64]    On August 5, 2020, following the above meeting, I went out of work on a medical leave of absence due to the race- and retaliatory-based hostile work environment to which I have been subjected.

[65]    Respondents have been trying to push me out because of my race and/or race discrimination complaints.

[66]    Respondents failed to compensate me for the CVS Health/Caremark/Aetna account I secured because of my race and/or race discrimination complaints.

[67]    Respondents removed accounts from me, which impacted my compensation and future opportunities, because of my race and/or race discrimination complaints.

[68]    Respondents failed to promote me because of my race and/or race discrimination complaints.

[69]    Respondents subjected me to a hostile work environment because of my race and/or race discrimination complaints.

[70]    Before I complained of race discrimination, I had no performance issues throughout my employment with Respondents.

[71]    Respondents' race discriminatory and retaliatory conduct toward me has caused me emotional distress.

[72]    **I bring this Complaint as a class and pattern and practice Complaint on behalf of myself and any and all current or former employees of Respondents who are black, and who have been discriminated against based on race in connection with hiring, promotion, demotion, compensation, being subjected to a hostile work environment, position selection, and termination.**

**B.** Based on the aforementioned, I allege that Respondents have discriminated against me because of my race (black), and retaliated against me because of my race discrimination complaints, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

4.    The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

   __X__    **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s): __(a); (d)__**

   ____    Section 5.1 Subsection(s) _____

   ____    Section 5.2 Subsection(s) _____

   ____    Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

5.    Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

    **X**        **This charge will be referred to the EEOC for the purpose of dual filing.**

6.    The Complainant seeks that Respondents be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory practice(s) and procedure(s).

(c) Remedy the discriminatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.


11/23/2020
(Date Signed)

_Marian J. Washington-McQuay_
(Signature)    Marian "Josie" Washington-McQuay
REDACTED
West Chester, PA 19382

# EXHIBIT 3

Received

SEP 2 3 2021

PA Human Relations Commission
Philadelphia Regional Office

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## THIRD COMPLAINT

| | | |
|---|---|---|
| COMPLAINANT: | : | DOCKET No.    20 2 0 0 1 293 |
| **MARIAN "JOSIE" WASHINGTON-MCQUAY** | : | |
| v. | : | |
| RESPONDENTS: | : | |
| **WW HEALTH SOLUTIONS** | : | |
| and | : | |
| **WW NORTH AMERICA HOLDINGS, INC.** | : | |
| and | : | |
| **WW INTERNATIONAL, INC F/K/A WEIGHT WATCHERS  INTERNATIONAL, INC.** | : | |

1. The Complainant herein is:

   Name:      Marian "Josie" Washington-McQuay

   Address:   REDACTED
              West Chester, PA 19382

2. The Respondents herein are:

   Names:     WW Health Solutions; WW North America Holdings, Inc.; WW
              International, Inc. f/k/a Weight Watchers International, Inc.

   Address:   675 Sixth Avenue, 6th Floor
              New York, NY 10010

3.  I, <u>Marian "Josie" Washington-McQuay</u>, the Complainant herein, allege that I was

subjected to unlawful discrimination because of my race (black) and actual and/or perceived

disabilities and/or record of impairment (Anxiety and Depression), and unlawful retaliation

because of my complaints of discrimination and/or for requesting an accommodation, as set forth

below.

### Discrimination and Retaliation

**A. I specifically allege, in addition to that set forth in my First Complaint (which
is attached hereto as Exhibit A and incorporated herein by reference) and
Second Complaint (which is attached hereto as Exhibit B and incorporated
herein by reference), including, but not limited, the following:**

[1]        On or about June 9, 2021, my previous supervisor Timothy Patno (white),

Vice President of Sales, resigned.

[2]        I was qualified to assume his position and job duties. However,

Respondents instead gave his job duties to Laura Bohroquez (white), Director of Growth and

Strategy, who to my knowledge is not a person with a disability. I was more qualified than

Bohroquez to assume the Vice President of Sales position and job duties.

[3]        On July 22, 2021, I filed my Second PHRC Complaint.

[4]        I emailed Respondents a copy of the Complaint on July 22, 2021.

[5]        On or about August 12, 2021, Respondents terminated my employment,

effective September 1, 2021.

[6]        At the time of my termination, Respondents told me I was being

terminated due to my Performance Improvement Plan ("PIP").

[7]        However, Respondents subsequently informed me that I was being terminated as part of a company reorganization.

[8]        At the time of my termination, two (2) other employees held the position of Sales Executive, Mark Russo (white) and Jennifer Ryan (white). To my knowledge neither employee is a person with a disability.

[9]        I was more qualified and experienced than both individuals to hold the position of Sales Executive. Yet, neither individual had their employment terminated.

[10]       Furthermore, right before my termination, Brittany Goettsch (white), Sales Executive, resigned. To my knowledge Ms. Goettsch is not a person with a disability.

[11]       To my knowledge, Respondents were not going to terminate her employment as part of the reorganization had she not resigned.

[12]       I was more experienced and qualified than Ms. Goettsch for the position of Sales Executive.

[13]       Additionally, Respondents retained Laura MacDonald (white), Business Development Director, and Traci Shoemaker (white), Business Development Manager. To my knowledge neither employee is a person with a disability.

[14]       I was more qualified than both those individuals to perform their positions.

[15]       Following notice of my termination, on or about August 31, 2021, Respondents informed me that they would not pay me for sales commissions that were owed to me.

[16]       Respondents have discriminated against me because of my race and my actual and/or perceived disabilities and/or record of impairment and have subjected me to

retaliation, as articulated herein, including, without limitation, failing to promote me, terminating my employment, and failing to pay my sales commissions.

[17]     Respondents subjected me to a discriminatory and retaliatory hostile work environment, as articulated herein.

[18]     Respondents' discriminatory and retaliatory conduct toward me has caused me emotional distress.

[19]     **I bring this Complaint as a class and pattern and practice Complaint on behalf of myself and any and all current or former employees of Respondents who are black, and who have been discriminated against based on race in connection with hiring, promotion, demotion, compensation, being subjected to a hostile work environment, position selection, and termination.**

B.   Based on the aforementioned, I allege that Respondents have discriminated against me because of my race and because of my actual and/or perceived disabilities and/or record of impairment, and retaliated against me for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

4.       The allegations in Paragraph 3 hereof constitute unlawful discriminatory and retaliatory practices in violation of:

        _X_       **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s): _(a); (d)_**

        ____       Section 5.1 Subsection(s) _____

To: +12155603682          Page: 08 of 32          2021-09-22 16:52:29 EDT          12155652859          From: Danielle Buccieri

_____    Section 5.2 Subsection(s) _____

_____    Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961,

P.L. 766, as amended) Section 4 Subsection(s) _____

5.    Other action based upon the aforesaid allegations has been instituted by the

Complainant in any court or before any other commission within the Commonwealth of

Pennsylvania as follows:

**__X__        This charge will be referred to the EEOC for the purpose of dual**

**filing.**

6.    The Complainant seeks that Respondents be required to:

(a) Make the Complainant whole;

(b) Provide Complainant with back pay and front pay;

(c) Provide Complainant with all other economic losses;

(d) Provide Complainant with compensatory damages for emotional harm;

(e) Provide Complainant with punitive damages;

(f) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s);

(g) Remedy the discriminatory and retaliatory effect of past practice(s) and

procedure(s);

(h) Take further affirmative action necessary and appropriate to remedy the violations

complained of herein; and

(i) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this Third Complaint are true and correct

to the best of my knowledge, information, and belief. I understand that false statements herein

are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification

to authorities.

9/22/21
(Date Signed)

Marian T. Washington - McQuay
(Signature)          Marian "Josie" Washington-McQuay
REDACTED
West Chester, PA 19382

Tc: +12155603682          Page: 10 of 32          2021-09-22 16:52:29 EDT          12155652859          From: Danielle Buccieri

# EXHIBIT A

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## COMPLAINT

COMPLAINANT:                                    :

**MARIAN "JOSIE" WASHINGTON-MCQUAY** :          Docket No.
                                                :
v.                                              :
                                                :
RESPONDENTS:                                    :
                                                :
**WW HEALTH SOLUTIONS**                         :
                                                :
and                                             :
                                                :
**WW NORTH AMERICA HOLDINGS, INC.**             :
                                                :
and                                             :
                                                :
**WEIGHT WATCHERS**                             :
**INTERNATIONAL, INC**                          :

1. The Complainant herein is:

   Name:        Marian "Josie" Washington-McQuay

   Address:     **REDACTED**
                West Chester, PA 19382

2. The Respondents herein are:

   Names:       WW Health Solutions; WW North America Holdings, Inc.; Weight
                Watchers International, Inc.

   Address:     675 Sixth Avenue, 6th Floor
                New York, NY 10010

3. I, <u>Marian "Josie" Washington-McQuay</u>, the Complainant herein, allege that I was subjected to unlawful discrimination because of my race (black), and unlawful retaliation because of my complaints of race discrimination, as set forth below.

### Discrimination and Retaliation

#### A. I specifically allege:

[1]    I was hired by Respondents in or about June 2016.

[2]    I am a current employee of Respondents.

[3]    I have consistently performed my job duties in a highly competent manner, and have received positive feedback and performance reviews.

[4]    I hold the position of Sales Executive / Strategic Sales Manager.

[5]    I work out of my home office in Pennsylvania.

[6]    I report to Timothy Patno (white), Vice President of Sales. Patno reports to Chere Scythes (white), Senior Vice President and General Manager.

[7]    Before reporting to Patno, I reported to Will Harbour (white), National Sales Manager.

[8]    I was the only black employee in my department.

[9]    On or about February 7, 2018, in a meeting with Harbour and Gary Foster (white), Chief Clinical Officer, Respondents removed approximately sixty-two (62) accounts from my territory, which would reduce my compensation and future opportunities.

[10]    I was the only employee reporting to Harbour who had accounts removed, and the only black employee, out of four (4) employees, who was reporting to Harbour. Respondents did not remove accounts from any of Harbour's other three (3) direct reports—all of whom were white.

[11]    In or about October 2018, I began indirectly reporting to Scythes.

[12]    In or about March 2019, when Harbour separated from Respondents, the position of National Sales Manager that he had held was changed to a Vice President of Sales position, which was a newly created position.

[13]    I repeatedly expressed my interest in the Vice President of Sales position. I was qualified for the position.

[14]    On or about April 26, 2019, I was appointed to the Interim Vice President of Sales position. I directly reported to Scythes in this position.

[15]    I was not aware of any employee at Respondents who was not placed in the open/permanent position after holding an interim position.

[16]    On August 2, 2019, Respondents failed to promote me to the Vice President of Sales position. Instead of promoting me, Respondents selected Patno (white), an external candidate with little to no experience in the healthcare field, for the Vice President of Sales position. I was more qualified for the Vice President of Sales position than the white external candidate who was hired for the position. I was assigned to report to Patno.

[17]    On or about August 2, 2019, I began reporting to Patno.

[18]    I trained Patno for the Vice President of Sales position.

[19]    I am the only black employee reporting to Patno.

[20]    I am the only black employee out of approximately fifty-five (55) employees in my department.

[21]    Respondents have an underrepresentation of black employees, particularly in high-level positions.

[22]     In addition to me, the following employees directly report to Patno. I am more qualified to perform each of these employee's positions.

> (a) Brittany Goettsch (white), Sales Executive;
>
> (b) Meagan Voight (white), Sales Executive / Strategic Sales Manager;
>
> (c) Mark Russo (white), Sales Executive;
>
> (d) Jennifer McTigue (white), Regional Sales Manager;
>
> (e) Laura MacDonald (white), Director of Business Development.

[23]     Respondents have treated me differently and worse, and in a more hostile and dismissive manner, than they have treated white employees.

[24]     On September 4, 2019, in a meeting with Foster, John Birnhak (white), Philadelphia Franchise Owner, Michelle Mendoza (white/Hispanic), Vice President of Field Operations, Joyce Johnson (black), At Work Representative, and several other white employees, I gave a presentation on a new franchise payment model that I had created. During the meeting, after I addressed and answered questions on my presentation, Birnhak looked at Foster and instructed Johnson (black) and me to leave the meeting. Birnhak stated that they had other things to discuss. When I returned to the meeting, the meeting had ended.

[25]     On September 4, 2019, following the above meeting, I complained to Mendoza that Johnson and I were the only black employees in the meeting and the only employees that were asked to leave the meeting.

[26]     In or about September 2019, Respondents hired Megan Voight (white), Sales Executive / Strategic Sales Manager.

[27]     In or about September 2019, Respondents removed from me a portion of my accounts, which reduced my compensation and future opportunities, and assigned them to Voight. I was more qualified to handle the accounts than the white employee to whom they were assigned.

[28]     In or about October 2019, after I had expressed interest in being the Sales liaison for Respondents' franchise partners and training the franchise teams, I learned that this responsibility was assigned to McTigue (white), instead of me. I was more qualified to handle the responsibility than the white employee to whom it was assigned.

[29]     On October 14, 2019, Respondents failed to promote me to a newly created Director of Business Development position. I was qualified for the position. Instead of promoting me, Respondents hired MacDonald (white) for the position. I had no opportunity to apply for the position because it was not posted. If the position were posted, I would have applied for it. I was more qualified for the position than the white employee who was hired.

[30]     Respondents removed certain job duties and responsibilities from me and assigned them to MacDonald (white). The stated reason was that MacDonald was a better fit for the job duties and responsibilities. I was more qualified to perform my job duties and responsibilities than the white employee to whom they were assigned.

[31]     On October 22, 2019, during Respondents' National Meeting, Sales Breakout, Patno instructed McTigue (white) to oversee the meeting instead of me.

[32]     On December 11, 2019, Tess Martel (white), Strategic Sales Manager, told me that I was the only Strategic Sales Manager who was not invited or on the list to attend the Oprah Tour events. I was the only black Sales Manager. The employees on the list to attend the

event included the following. I was more qualified to attend the event than the employees who were on the list to attend.

 1. Tess Martel (white), Strategic Sales Manager;

 2. Meagan Voight (white), Strategic Sales Manager;

 3. AJ Grant (white), Strategic Sales Manager;

 4. Jennifer McTigue (white), Regional Sales Manager;

 5. Laura MacDonald (white), Director of Business Development.

[33] On December 12, 2019, in a meeting with Patno, I asked why I was not on the list to attend the Oprah Tour event in New York, especially because the event was being held in my territory and many of my clients would be attending. Patno told me that there were no seats left for the event.

[34] On December 13, 2019, Patno told me that I was not invited to attend a meeting with one of my largest clients, and that he and Scythes would attend instead.

[35] I repeatedly expressed my interested in being promoted. Patno told me that I had to earn it.

[36] For 2019, met my sales revenue target for the third consecutive year.

[37] In or about January 2020, when Patno announced a territory realignment, I was the only Sales Manager who had accounts and states removed from me. The accounts and states removed from me were assigned to Voight (white). I was more qualified to handle the accounts and states than the white employee to whom they were assigned.

[38] On January 9, 2020, Patno told me that I could attend the Oprah Tour event in New York if, within forty-eight (48) hours, I secured another client to attend with me.

[39]      On or about February 4, 2020, I secured a significant account: the CVS Health/Caremark/Aetna account.

[40]      On February 25, 2020, in a phone call with Patno, Scythes, MacDonald, and Joanna Strober (white), Executive Investor, they told me that the CVS Health/Caremark/Aetna account that I had secured was being taken away from me and given to MacDonald (white). I was more qualified to handle the CVS Health/Caremark/Aetna account that I had secured than the white employee to whom it was assigned.

[41]      On or about April 13, 2020, Respondents hired Russo (white), whom I was instructed to train.

[42]      In or about April 2020, Kelly Serwer (white), Client Success Executive, was asked to give a presentation to Respondents' Health Solutions department instead of me. I was more qualified to give the presentation than the white employee who was asked to give the presentation.

[43]      On June 3, 2020, Respondents unjustly gave credit to MacDonald (white) for the CVS Health/Caremark/Aetna account I secured that Respondents removed from me and assigned to MacDonald.

[44]      On June 5, 2020, on a conference call with Kimberly Seymour (black), Senior Vice President, Corporate Human Resources, and approximately thirty (30) other employees, we discussed recent protests in connection with the Black Lives Matter movement. I complained about the lack of career advancement opportunities at Respondents for black employees. I stated that Respondents needed to hold diversity training and develop accountability for race discrimination. I stated that there were no black employees on

Respondents' science team, and suggested that Respondents build a relationship with the Association of Black Cardiologists.

[45]    On June 5, 2020, in a phone call with Seymour, following the above conference call, I complained of race discrimination. I complained that, as a black employee, I was treated worse and had fewer career advancement opportunities than white employees. I complained that Respondents removed the CVS Health/Caremark/Aetna account from me, that I had secured, and gave it to a white employee. I complained that, as a black employee, I lacked visibility and opportunities. I expressed my interest in and qualifications for a Chief Diversity and Inclusion position. Seymour stated that she was looking to hire an external candidate for a Diversity and Inclusion position.

[46]    On June 11, 2020, in a phone call with Scythes, I complained of race discrimination, including that the CVS Health/Caremark/Aetna account that I had secured was taken away from me and given to MacDonald, who was receiving the credit and compensation for it. I complained of the lack of career advancement opportunities and visibility for black employees at Respondents. I stated that I had repeatedly expressed interest in being promoted but had not been.

[47]    On June 15, 2020, in a phone call with Christina Westbrooks al-Haddad (black), Senior Human Resources Advisor, I complained of the lack of career advancement opportunities and visibility for black employees at Respondents. I stated that I had repeatedly expressed interest in being promoted but had not been. I expressed my interest in and qualifications for a Chief Diversity and Inclusion position. Westbrooks instructed me to discuss my career advancement ideas with Patno.

[48]     On June 18, 2020, in a meeting with Scythes, I asked why the CVS Health/Caremark/Aetna account that I had secured was taken away from me, why I did not get the credit and compensation for securing the CVS Health/Caremark/Aetna account, and why I was being overlooked for career advancement and project opportunities. I complained of the lack of career advancement opportunities and visibility for black employees at Respondents. I stated that I had repeatedly expressed interest in being promoted but had not been. I stated that I was qualified for many positions and responsibilities at Respondents, and stated that I did not have the opportunity to apply for the newly created Director of Business Development position because it was not posted. Scythes agreed that I was qualified for positions, including the Director of Business Development position, and career advancement opportunities, but stated that Respondents wanted to hire MacDonald (white) for the Director of Business Development position and that it was "all about the perception of [me]." Scythes unjustly criticized my performance, including raising alleged issues from 2018 and 2019 and telling me that employees were complaining that I was condescending when training them.

[49]     On June 22, 2020, in a phone call with Westbrooks al-Haddad, I complained of race discrimination, including that the CVS Health/Caremark/Aetna account that I had secured was taken away from me and given to MacDonald, who was receiving the credit and compensation for it. Westbrooks al-Haddad confirmed that the Director of Business Development position was not posted, and that Respondents wanted MacDonald in the position.

[50]     On June 23, 2020, in a phone call with Patno, he told me that I would receive credit and be compensated for securing the CVS Health/Caremark/Aetna account.

[51]     I did not receive any credit or compensation for securing the CVS Health/Caremark/Aetna account.

[52]    On or about June 29, 2020, Respondents hired Brittany Goettsch (white), Sales Executive, whom I was asked to train.

[53]    On June 29, 2020, in a phone call with Seymour, I complained of race discrimination, including that the CVS Health/Caremark/Aetna account that I had secured was removed from me and assigned to MacDonald, that MacDonald was being given the credit and compensation for the account instead of me, and that I had not been given opportunities for promotion and career advancement. Seymour told me that she would send an email to Respondents' Executive Committee regarding my complaints, and that she would do an investigation.

[54]    On June 30, 2020, following a phone call with Westbrooks al-Haddad, I emailed to her documentation and communication related to significant accounts I secured that were taken away from me.

[55]    On July 1, 2020, in a meeting with Westbrooks al-Haddad, we discussed the documentation and communication that I had sent to her, and she agreed to be present in future meetings and calls with Patno and Scythes.

[56]    On July 20, 2020, in a meeting with Patno and Westbrooks al-Haddad, they stated that there was miscommunication regarding the CVS Health/Caremark/Aetna account I had secured, and that Respondents had hired MacDonald to manage this type of account. I complained of race discrimination, including that I had not been given opportunities for promotion and career advancement or the opportunity to apply or interview for the Director of Business Development position since it was not posted. Westbrook al-Haddad confirmed that the Director of Business Development position was not posted, and requested that Patno discuss

opportunities with me. Patno stated that he did not foresee any new positions for me in the future.

[57]    On or about July 27, 2020, Respondents removed accounts from me and assigned them to white employees. I was more qualified to handle the accounts than the white employees to whom they were assigned. Patno told me that I could not take scheduled, paid time off unless I turned over the accounts that were being removed from me.

[58]    On July 27, 2020, in an email to Patno, I complained of retaliation, stating that I was the only employee who had accounts removed and reassigned to others, and that this was impacting my future goals and bonus potential.

[59]    On July 28, 2020, in an email to Patno, I stated that I wanted to have Westbrooks al-Haddad on my next phone call with Patno, as I wanted to discuss my concerns and ongoing experiences with discrimination and retaliation at Respondents.

[60]    On July 29, 2020, in an email to Patno and Westbrooks al-Haddad, I stated that I wanted to schedule a meeting to discuss my compensation for the CVS Health/Caremark/Aetna account I secured that Respondents removed from me and assigned to MacDonald, as Patno had previously told me that I would be compensated for it.

[61]    Westbrooks al-Haddad told me that they would discuss and get back to me.

[62]    On July 30, 2020, Respondents unjustly gave credit to MacDonald (white) for the CVS Health/Caremark/Aetna account I secured that Respondents removed from me and assigned to MacDonald.

[63]    On August 5, 2020, in a Zoom meeting with Patno and Westbrooks al-Haddad, Respondents issued to me an Employee Warning Letter. My performance did not

warrant an Employee Warning Letter. The Employee Warning Letter contained false statements and misrepresentations. My performance was unjustly criticized, and I was told that I would not be compensated for the CVS Health/Caremark/Aetna account I had secured that was removed from me and given to MacDonald.

[64]    On August 5, 2020, following the above meeting, I went out of work on a medical leave of absence due to the race- and retaliatory-based hostile work environment to which I have been subjected.

[65]    Respondents have been trying to push me out because of my race and/or race discrimination complaints.

[66]    Respondents failed to compensate me for the CVS Health/Caremark/Aetna account I secured because of my race and/or race discrimination complaints.

[67]    Respondents removed accounts from me, which impacted my compensation and future opportunities, because of my race and/or race discrimination complaints.

[68]    Respondents failed to promote me because of my race and/or race discrimination complaints.

[69]    Respondents subjected me to a hostile work environment because of my race and/or race discrimination complaints.

[70]    Before I complained of race discrimination, I had no performance issues throughout my employment with Respondents.

[71]    Respondents' race discriminatory and retaliatory conduct toward me has caused me emotional distress.

[72]    I bring this Complaint as a class and pattern and practice Complaint on behalf of myself and any and all current or former employees of Respondents who are black, and who have been discriminated against based on race in connection with hiring, promotion, demotion, compensation, being subjected to a hostile work environment, position selection, and termination.

B. Based on the aforementioned, I allege that Respondents have discriminated against me because of my race (black), and retaliated against me because of my race discrimination complaints, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

4.    The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

   __X__    **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):  __(a); (d)__**

   _____    Section 5.1 Subsection(s) _____

   _____    Section 5.2 Subsection(s) _____

   _____    Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

5.    Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

    X        **This charge will be referred to the EEOC for the purpose of dual filing.**

6.    The Complainant seeks that Respondents be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory practice(s) and procedure(s).

(c) Remedy the discriminatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

11/23/2020
(Date Signed)

_Marian T. Washington-McQuay_
(Signature)    Marian "Josie" Washington-McQuay
REDACTED
West Chester, PA 19382

# EXHIBIT B

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## SECOND COMPLAINT

| | | |
|---|---|---|
| COMPLAINANT: | : | DOCKET No. |
| | : | |
| **MARIAN "JOSIE" WASHINGTON-MCQUAY** | : | |
| | : | |
| v. | : | |
| | : | |
| RESPONDENTS: | : | |
| | : | |
| **WW HEALTH SOLUTIONS** | : | |
| | : | |
| and | : | |
| | : | |
| **WW NORTH AMERICA HOLDINGS, INC.** | : | |
| | : | |
| and | : | |
| | : | |
| **WW INTERNATIONAL, INC F/K/A** | : | |
| **WEIGHT WATCHERS INTERNATIONAL,** | : | |
| **INC.** | : | |

1. The Complainant herein is:

    Name:       Marian "Josie" Washington-McQuay

    Address:    REDACTED
                West Chester, PA 19382

2. The Respondents herein are:

    Names:      WW Health Solutions; WW North America Holdings, Inc.; WW
                International, Inc. f/k/a Weight Watchers International, Inc.

    Address:    675 Sixth Avenue, 6th Floor
                New York, NY 10010

3. I, Marian "Josie" Washington-McQuay, the Complainant herein, allege that I was

subjected to unlawful discrimination because of my race (black) and actual and/or perceived

disabilities and/or record of impairment (Anxiety and Depression), and unlawful retaliation

because of my complaints of discrimination and/or for requesting an accommodation, as set forth

below.

**Discrimination and Retaliation**

**A. I specifically allege, in addition to that set forth in my first Complaint (which**
**is attached hereto as Exhibit A and incorporated herein by reference),**
**including, but not limited, the following, all of which has occurred since my**
**first Complaint:**

[1]    Respondents' unlawful actions caused me to suffer from Anxiety and

Depression, both of which are disabilities under the law.

[2]    I returned from my medical leave on or about February 1, 2021.

[3]    My medical leave was a reasonable accommodation for my disabilities.

[4]    Shortly after I returned from my medical leave, I learned that numerous of

my sales accounts were taken from me and given to other white employees.

[5]    On or about March 12, 2021, Respondents gave me an unjustified

performance review of "Needs Improvement." This was the worst performance review that I

have received in my career with Respondents.

[6]    In or about May 2021, Respondents removed from me one of my largest

accounts, CVS Health/Caremark/Aetna. Respondents stated that a member of the account

allegedly said that I did not cater to their needs and that I was too pushy and aggressive.

[7]      When I asked for specific details of my alleged poor behavior, Respondents refused to provide me with that information.

[8]      I never received any prior feedback from the account that I did not cater to their needs, and my interactions and feedback with the account were positive.

[9]      On or about June 8, 2021, Respondents placed me on an unjustified Performance Improvement Plan ("PIP").

[10]     On or about June 22, 2021, I sent Respondents an email rebutting the allegations in the PIP. I also complained that Respondents were discriminating and retaliating against me.

[11]     One day later, on June 23, 2021, Respondent informed me that my "PIP was not issued as an act of discrimination or retaliation."

[12]     Respondents did not investigate or take any corrective actions regarding my complaint.

[13]     Respondents have discriminated against me because of my race and my actual and/or perceived disabilities and/or record of impairment and have subjected me to retaliation, as articulated herein.

[14]     Respondents subjected me to a discriminatory and retaliatory hostile work environment, as articulated herein.

[15]     Respondents' discriminatory and retaliatory conduct toward me has caused me emotional distress.

[16]     **I bring this Complaint as a class and pattern and practice Complaint on behalf of myself and any and all current or former employees of Respondents who are black, and who have been discriminated against based on race in connection with hiring,**

promotion, demotion, compensation, being subjected to a hostile work environment, position selection, and termination.

      **B.** Based on the aforementioned, I allege that Respondents have discriminated against me because of my race and because of my actual and/or perceived disabilities and/or record of impairment, and retaliated against me for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

    4.    The allegations in Paragraph 3 hereof constitute unlawful discriminatory and retaliatory practices in violation of:

        X        **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):** _(a); (d)_

       _____       Section 5.1 Subsection(s) _____

       _____       Section 5.2 Subsection(s) _____

       _____       Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

    5.    Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

        X        **This charge will be referred to the EEOC for the purpose of dual filing.**

    6.    The Complainant seeks that Respondents be required to:

(a) Make the Complainant whole;

(b) Provide Complainant with back pay and front pay;

(c) Provide Complainant with all other economic losses;

(d) Provide Complainant with compensatory damages for emotional harm;

(e) Provide Complainant with punitive damages;

(f) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s);

(g) Remedy the discriminatory and retaliatory effect of past practice(s) and procedure(s);

(h) Take further affirmative action necessary and appropriate to remedy the violations complained of herein; and

(i) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this Second Complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

7/22/2021
(Date Signed)

*Marian J. Washington-McQuay*
(Signature)    Marian "Josie" Washington-McQuay
REDACTED
West Chester, PA 19382

COMMONWEALTH OF PENNSYLVANIA

GOVERNOR'S OFFICE

PENNSYLVANIA HUMAN RELATIONS COMMISSION

|  |  |
|---|---|
| Marian "Josie" Washington-McQuay,<br>    Complainant | : <br> : <br> : <br> : |
| v. | : PHRC Case No. 202001293<br> : |
| WW Health Solutions; WW North<br>America Holdings, Inc.; Weight Watchers<br>International, Inc. f/k/a Weight Watchers<br>International, Inc.,<br>    Respondent | : EEOC No. 17F202160874<br> : <br> : <br> : |

## SECOND AMENDED COMPLAINT

### JURISDICTION

1.   Jurisdiction is pursuant to the Pennsylvania Human Relations Act 43 P.S. §§ 951-963.

### PARTIES

2.   The Complainant herein is:

Marian "Josie" Washington-McQuay
REDACTED
West Chester, PA  19382

3.   The Respondent herein is:

WW Health Solutions; WW North America Holdings, Inc.; Weight Watchers
International, Inc. f/k/a Weight Watchers International, Inc.
675 Sixth Avenue, 6th Floor
New York, NY 10010

Received

JUL 22 2021

PA Human Relations Commission
Philadelphia Regional Office

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

SECOND COMPLAINT

COMPLAINANT:                          :          DOCKET No.   202001293
                                      :
MARIAN "JOSIE" WASHINGTON-MCQUAY      :
                                      :
V.                                    :
                                      :
RESPONDENTS:                          :
                                      :
WW HEALTH SOLUTIONS                   :
                                      :
and                                   :
                                      :
WW NORTH AMERICA HOLDINGS, INC.       :
                                      :
and                                   :
                                      :
WW INTERNATIONAL, INC F/K/A           :
WEIGHT WATCHERS  INTERNATIONAL,       :
INC.                                  :

1.  The Complainant herein is:

    Name:      Marian "Josie" Washington-McQuay

    Address:   REDACTED
               West Chester, PA 19382

2.  The Respondents herein are:

    Names:     WW Health Solutions; WW North America Holdings, Inc.; WW
               International, Inc. f/k/a Weight Watchers International, Inc.

    Address:   675 Sixth Avenue, 6th Floor
               New York, NY 10010

To: 12155603682          Page: 04 of 24          2021-07-22 15:34:02 EDT          12155652859          From: Danielle Buccieri

3. I, Marian "Josie" Washington-McQuay, the Complainant herein, allege that I was

subjected to unlawful discrimination because of my race (black) and actual and/or perceived

disabilities and/or record of impairment (Anxiety and Depression), and unlawful retaliation

because of my complaints of discrimination and/or for requesting an accommodation, as set forth

below.

### Discrimination and Retaliation

A. **I specifically allege, in addition to that set forth in my first Complaint (which**
   **is attached hereto as Exhibit A and incorporated herein by reference),**
   **including, but not limited, the following, all of which has occurred since my**
   **first Complaint:**

[1]    Respondents' unlawful actions caused me to suffer from Anxiety and

Depression, both of which are disabilities under the law.

[2]    I returned from my medical leave on or about February 1, 2021.

[3]    My medical leave was a reasonable accommodation for my disabilities.

[4]    Shortly after I returned from my medical leave, I learned that numerous of

my sales accounts were taken from me and given to other white employees.

[5]    On or about March 12, 2021, Respondents gave me an unjustified

performance review of "Needs Improvement." This was the worst performance review that I

have received in my career with Respondents.

[6]    In or about May 2021, Respondents removed from me one of my largest

accounts, CVS Health/Caremark/Aetna. Respondents stated that a member of the account

allegedly said that I did not cater to their needs and that I was too pushy and aggressive.

[7]        When I asked for specific details of my alleged poor behavior, Respondents refused to provide me with that information.

[8]        I never received any prior feedback from the account that I did not cater to their needs, and my interactions and feedback with the account were positive.

[9]        On or about June 8, 2021, Respondents placed me on an unjustified Performance Improvement Plan ("PIP").

[10]        On or about June 22, 2021, I sent Respondents an email rebutting the allegations in the PIP. I also complained that Respondents were discriminating and retaliating against me.

[11]        One day later, on June 23, 2021, Respondent informed me that my "PIP was not issued as an act of discrimination or retaliation."

[12]        Respondents did not investigate or take any corrective actions regarding my complaint.

[13]        Respondents have discriminated against me because of my race and my actual and/or perceived disabilities and/or record of impairment and have subjected me to retaliation, as articulated herein.

[14]        Respondents subjected me to a discriminatory and retaliatory hostile work environment, as articulated herein.

[15]        Respondents' discriminatory and retaliatory conduct toward me has caused me emotional distress.

[16]        **I bring this Complaint as a class and pattern and practice Complaint on behalf of myself and any and all current or former employees of Respondents who are black, and who have been discriminated against based on race in connection with hiring,**

promotion, demotion, compensation, being subjected to a hostile work environment, position selection, and termination.

       **B.** Based on the aforementioned, I allege that Respondents have discriminated against me because of my race and because of my actual and/or perceived disabilities and/or record of impairment, and retaliated against me for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

    4.    The allegations in Paragraph 3 hereof constitute unlawful discriminatory and retaliatory practices in violation of:

        _X_      **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):**   _(a); (d)_

        ____      Section 5.1 Subsection(s) _____

        ____      Section 5.2 Subsection(s) _____

        ____      Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961,

    P.L. 766, as amended) Section 4 Subsection(s) _____

    5.    Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

        _X_      **This charge will be referred to the EEOC for the purpose of dual filing.**

    6.    The Complainant seeks that Respondents be required to:

To: 12155603682          Page: 07 of 24          2021-07-22 15:34:02 EDT          12155652859          From: Daniella Buccien

(a) Make the Complainant whole;

(b) Provide Complainant with back pay and front pay;

(c) Provide Complainant with all other economic losses;

(d) Provide Complainant with compensatory damages for emotional harm;

(e) Provide Complainant with punitive damages;

(f) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s);

(g) Remedy the discriminatory and retaliatory effect of past practice(s) and procedure(s);

(h) Take further affirmative action necessary and appropriate to remedy the violations complained of herein; and

(i) Provide such further relief as the Commission deems necessary and appropriate.

To: 12155603682                 Page: 08 of 24              2021-07-22 15:34:02 EDT              12155652859              From: Danielle Boccieri

## VERIFICATION

I hereby verify that the statements contained in this Second Complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

7/22/2021
(Date Signed)

Marian J. Washington-McQuay
(Signature)        Marian "Josie" Washington-McQuay
REDACTED
West Chester, PA 19382

To: 12155603682                    Page: 09 of 24                2021-07-22 15:34:02 EDT                12155652859                    From: Danielle Buccieri



To: 12155603882          Page: 10 of 24          2021-07-22 15:34:02 EDT          12155632809          From: Darach Lincoln

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## COMPLAINT

| | |
|---|---|
| COMPLAINANT: | : |
| | : |
| **MARIAN "JOSIE" WASHINGTON-MCQUAY** : | |
| | : |
| V. | : |
| | : |
| RESPONDENTS: | : |
| | : |
| **WW HEALTH SOLUTIONS** | : |
| | : |
| and | : |
| | : |
| **WW NORTH AMERICA HOLDINGS, INC.** | : |
| | : |
| and | : |
| | : |
| **WEIGHT WATCHERS** | : |
| **INTERNATIONAL, INC** | : |

Docket No.

1.  The Complainant herein is:

    Name:        Marian "Josie" Washington-McQuay

    Address:     **REDACTED**
                 West Chester, PA 19382

2.  The Respondents herein are:

    Names:       WW Health Solutions; WW North America Holdings, Inc.; Weight
                 Watchers International, Inc.

    Address:     675 Sixth Avenue, 6th Floor
                 New York, NY 10010

To: 12155603682          Page: 11 of 24          2021-07-22 15:34:02 EDT          12155652859          From: Danielle Buccien

3.   I, Marian "Josie" Washington-McQuay, the Complainant herein, allege that I was subjected to unlawful discrimination because of my race (black), and unlawful retaliation because of my complaints of race discrimination, as set forth below.

Discrimination and Retaliation

A.  I specifically allege:

[1]       I was hired by Respondents in or about June 2016.

[2]       I am a current employee of Respondents.

[3]       I have consistently performed my job duties in a highly competent manner, and have received positive feedback and performance reviews.

[4]       I hold the position of Sales Executive / Strategic Sales Manager.

[5]       I work out of my home office in Pennsylvania.

[6]       I report to Timothy Patno (white), Vice President of Sales.  Patno reports to Chere Scythes (white), Senior Vice President and General Manager.

[7]       Before reporting to Patno, I reported to Will Harbour (white), National Sales Manager.

[8]       I was the only black employee in my department.

[9]       On or about February 7, 2018, in a meeting with Harbour and Gary Foster (white), Chief Clinical Officer, Respondents removed approximately sixty-two (62) accounts from my territory, which would reduce my compensation and future opportunities.

[10]     I was the only employee reporting to Harbour who had accounts removed, and the only black employee, out of four (4) employees, who was reporting to Harbour. Respondents did not remove accounts from any of Harbour's other three (3) direct reports – all of whom were white.

To: 12155603682          Page: 12 of 24          2021-07-22 15:34:02 EDT          12155652859          From: Danielle Buccieri

[11]       In or about October 2018, I began indirectly reporting to Scythes.

[12]       In or about March 2019, when Harbour separated from Respondents, the position of National Sales Manager that he had held was changed to a Vice President of Sales position, which was a newly created position.

[13]       I repeatedly expressed my interest in the Vice President of Sales position. I was qualified for the position.

[14]       On or about April 26, 2019, I was appointed to the Interim Vice President of Sales position. I directly reported to Scythes in this position.

[15]       I was not aware of any employee at Respondents who was not placed in the open/permanent position after holding an interim position.

[16]       On August 2, 2019, Respondents failed to promote me to the Vice President of Sales position. Instead of promoting me, Respondents selected Patno (white), an external candidate with little to no experience in the healthcare field, for the Vice President of Sales position. I was more qualified for the Vice President of Sales position than the white external candidate who was hired for the position. I was assigned to report to Patno.

[17]       On or about August 2, 2019, I began reporting to Patno.

[18]       I trained Patno for the Vice President of Sales position.

[19]       I am the only black employee reporting to Patno.

[20]       I am the only black employee out of approximately fifty-five (55) employees in my department.

[21]       Respondents have an underrepresentation of black employees, particularly in high-level positions.

[22]    In addition to me, the following employees directly report to Patno. I am more qualified to perform each of these employee's positions.

       (a) Brittany Goettsch (white), Sales Executive;

       (b) Meagan Voight (white), Sales Executive / Strategic Sales Manager;

       (c) Mark Russo (white), Sales Executive;

       (d) Jennifer McTigue (white), Regional Sales Manager;

       (e) Laura MacDonald (white), Director of Business Development.

[23]    Respondents have treated me differently and worse, and in a more hostile and dismissive manner, than they have treated white employees.

[24]    On September 4, 2019, in a meeting with Foster, John Birnhak (white), Philadelphia Franchise Owner, Michelle Mendoza (white/Hispanic), Vice President of Field Operations, Joyce Johnson (black), At Work Representative, and several other white employees, I gave a presentation on a new franchise payment model that I had created. During the meeting, after I addressed and answered questions on my presentation, Birnhak looked at Foster and instructed Johnson (black) and me to leave the meeting. Birnhak stated that they had other things to discuss. When I returned to the meeting, the meeting had ended.

[25]    On September 4, 2019, following the above meeting, I complained to Mendoza that Johnson and I were the only black employees in the meeting and the only employees that were asked to leave the meeting.

[26]    In or about September 2019, Respondents hired Megan Voight (white), Sales Executive / Strategic Sales Manager.

[27]    In or about September 2019, Respondents removed from me a portion of my accounts, which reduced my compensation and future opportunities, and assigned them to Voight. I was more qualified to handle the accounts than the white employee to whom they were assigned.

[28]    In or about October 2019, after I had expressed interest in being the Sales liaison for Respondents' franchise partners and training the franchise teams, I learned that this responsibility was assigned to McTigue (white), instead of me. I was more qualified to handle the responsibility than the white employee to whom it was assigned.

[29]    On October 14, 2019, Respondents failed to promote me to a newly created Director of Business Development position. I was qualified for the position. Instead of promoting me, Respondents hired MacDonald (white) for the position. I had no opportunity to apply for the position because it was not posted. If the position were posted, I would have applied for it. I was more qualified for the position than the white employee who was hired.

[30]    Respondents removed certain job duties and responsibilities from me and assigned them to MacDonald (white). The stated reason was that MacDonald was a better fit for the job duties and responsibilities. I was more qualified to perform my job duties and responsibilities than the white employee to whom they were assigned.

[31]    On October 22, 2019, during Respondents' National Meeting, Sales Breakout, Patno instructed McTigue (white) to oversee the meeting instead of me.

[32]    On December 11, 2019, Tess Martel (white), Strategic Sales Manager, told me that I was the only Strategic Sales Manager who was not invited or on the list to attend the Oprah Tour events. I was the only black Sales Manager. The employees on the list to attend the

To: 12155603682          Page: 15 of 24          2021-07-22 15:34:02 EDT          12155652859          From: Danielle Buccieri

event included the following. I was more qualified to attend the event than the employees who were on the list to attend.

       1.  Tess Martel (white), Strategic Sales Manager:

       2.  Meagan Voight (white), Strategic Sales Manager;

       3.  AJ Grant (white), Strategic Sales Manager;

       4.  Jennifer McTigue (white), Regional Sales Manager;

       5.  Laura MacDonald (white), Director of Business Development.

[33]      On December 12, 2019, in a meeting with Patno, I asked why I was not on the list to attend the Oprah Tour event in New York, especially because the event was being held in my territory and many of my clients would be attending. Patno told me that there were no seats left for the event.

[34]      On December 13, 2019, Patno told me that I was not invited to attend a meeting with one of my largest clients, and that he and Scythes would attend instead.

[35]      I repeatedly expressed my interested in being promoted. Patno told me that I had to earn it.

[36]      For 2019, met my sales revenue target for the third consecutive year.

[37]      In or about January 2020, when Patno announced a territory realignment, I was the only Sales Manager who had accounts and states removed from me. The accounts and states removed from me were assigned to Voight (white). I was more qualified to handle the accounts and states than the white employee to whom they were assigned.

[38]      On January 9, 2020, Patno told me that I could attend the Oprah Tour event in New York if, within forty-eight (48) hours, I secured another client to attend with me.

[39]    On or about February 4, 2020, I secured a significant account: the CVS Health/Caremark/Aetna account.

[40]    On February 25, 2020, in a phone call with Patno, Scythes, MacDonald, and Joanna Strober (white), Executive Investor, they told me that the CVS Health/Caremark/Aetna account that I had secured was being taken away from me and given to MacDonald (white). I was more qualified to handle the CVS Health/Caremark/Aetna account that I had secured than the white employee to whom it was assigned.

[41]    On or about April 13, 2020, Respondents hired Russo (white), whom I was instructed to train.

[42]    In or about April 2020, Kelly Serwer (white), Client Success Executive, was asked to give a presentation to Respondents' Health Solutions department instead of me. I was more qualified to give the presentation than the white employee who was asked to give the presentation.

[43]    On June 3, 2020, Respondents unjustly gave credit to MacDonald (white) for the CVS Health/Caremark/Aetna account I secured that Respondents removed from me and assigned to MacDonald.

[44]    On June 5, 2020, on a conference call with Kimberly Seymour (black), Senior Vice President, Corporate Human Resources, and approximately thirty (30) other employees, we discussed recent protests in connection with the Black Lives Matter movement. I complained about the lack of career advancement opportunities at Respondents for black employees. I stated that Respondents needed to hold diversity training and develop accountability for race discrimination. I stated that there were no black employees on

Respondents' science team, and suggested that Respondents build a relationship with the Association of Black Cardiologists.

[45]    On June 5, 2020, in a phone call with Seymour, following the above conference call, I complained of race discrimination. I complained that, as a black employee, I was treated worse and had fewer career advancement opportunities than white employees. I complained that Respondents removed the CVS Health/Caremark/Aetna account from me, that I had secured, and gave it to a white employee. I complained that, as a black employee, I lacked visibility and opportunities. I expressed my interest in and qualifications for a Chief Diversity and Inclusion position. Seymour stated that she was looking to hire an external candidate for a Diversity and Inclusion position.

[46]    On June 11, 2020, in a phone call with Scythes, I complained of race discrimination, including that the CVS Health/Caremark/Aetna account that I had secured was taken away from me and given to MacDonald, who was receiving the credit and compensation for it. I complained of the lack of career advancement opportunities and visibility for black employees at Respondents. I stated that I had repeatedly expressed interest in being promoted but had not been.

[47]    On June 15, 2020, in a phone call with Christina Westbrooks al-Haddad (black), Senior Human Resources Advisor, I complained of the lack of career advancement opportunities and visibility for black employees at Respondents. I stated that I had repeatedly expressed interest in being promoted but had not been. I expressed my interest in and qualifications for a Chief Diversity and Inclusion position. Westbrooks instructed me to discuss my career advancement ideas with Patno.

[48]    On June 18, 2020, in a meeting with Scythes, I asked why the CVS
Health/Caremark/Aetna account that I had secured was taken away from me, why I did not get
the credit and compensation for securing the CVS Health/Caremark/Aetna account, and why I
was being overlooked for career advancement and project opportunities. I complained of the
lack of career advancement opportunities and visibility for black employees at Respondents. I
stated that I had repeatedly expressed interest in being promoted but had not been. I stated that I
was qualified for many positions and responsibilities at Respondents, and stated that I did not
have the opportunity to apply for the newly created Director of Business Development position
because it was not posted. Scythes agreed that I was qualified for positions, including the
Director of Business Development position, and career advancement opportunities, but stated
that Respondents wanted to hire MacDonald (white) for the Director of Business Development
position and that it was "all about the perception of [me]." Scythes unjustly criticized my
performance, including raising alleged issues from 2018 and 2019 and telling me that employees
were complaining that I was condescending when training them.

[49]    On June 22, 2020, in a phone call with Westbrooks al-Haddad, I
complained of race discrimination, including that the CVS Health/Caremark/Aetna account that I
had secured was taken away from me and given to MacDonald, who was receiving the credit and
compensation for it. Westbrooks al-Haddad confirmed that the Director of Business
Development position was not posted, and that Respondents wanted MacDonald in the position.

[50]    On June 23, 2020, in a phone call with Patno, he told me that I would
receive credit and be compensated for securing the CVS Health/Caremark/Aetna account.

[51]    I did not receive any credit or compensation for securing the CVS
Health/Caremark/Aetna account.

[52]     On or about June 29, 2020, Respondents hired Brittany Goettsch (white), Sales Executive, whom I was asked to train.

[53]     On June 29, 2020, in a phone call with Seymour, I complained of race discrimination, including that the CVS Health/Caremark/Aetna account that I had secured was removed from me and assigned to MacDonald, that MacDonald was being given the credit and compensation for the account instead of me, and that I had not been given opportunities for promotion and career advancement.  Seymour told me that she would send an email to Respondents' Executive Committee regarding my complaints, and that she would do an investigation.

[54]     On June 30, 2020, following a phone call with Westbrooks al-Haddad, I emailed to her documentation and communication related to significant accounts I secured that were taken away from me.

[55]     On July 1, 2020, in a meeting with Westbrooks al-Haddad, we discussed the documentation and communication that I had sent to her, and she agreed to be present in future meetings and calls with Patno and Scythes.

[56]     On July 20, 2020, in a meeting with Patno and Westbrooks al-Haddad, they stated that there was miscommunication regarding the CVS Health/Caremark/Aetna account I had secured, and that Respondents had hired MacDonald to manage this type of account.  I complained of race discrimination, including that I had not been given opportunities for promotion and career advancement or the opportunity to apply or interview for the Director of Business Development position since it was not posted.  Westbrook al-Haddad confirmed that the Director of Business Development position was not posted, and requested that Patno discuss

opportunities with me. Patno stated that he did not foresee any new positions for me in the future.

[57]    On or about July 27, 2020, Respondents removed accounts from me and assigned them to white employees. I was more qualified to handle the accounts than the white employees to whom they were assigned. Patno told me that I could not take scheduled, paid time off unless I turned over the accounts that were being removed from me.

[58]    On July 27, 2020, in an email to Patno, I complained of retaliation, stating that I was the only employee who had accounts removed and reassigned to others, and that this was impacting my future goals and bonus potential.

[59]    On July 28, 2020, in an email to Patno, I stated that I wanted to have Westbrooks al-Haddad on my next phone call with Patno, as I wanted to discuss my concerns and ongoing experiences with discrimination and retaliation at Respondents.

[60]    On July 29, 2020, in an email to Patno and Westbrooks al-Haddad, I stated that I wanted to schedule a meeting to discuss my compensation for the CVS Health/Caremark/Aetna account I secured that Respondents removed from me and assigned to MacDonald, as Patno had previously told me that I would be compensated for it.

[61]    Westbrooks al-Haddad told me that they would discuss and get back to me.

[62]    On July 30, 2020, Respondents unjustly gave credit to MacDonald (white) for the CVS Health/Caremark/Aetna account I secured that Respondents removed from me and assigned to MacDonald.

[63]    On August 5, 2020, in a Zoom meeting with Patno and Westbrooks al-Haddad, Respondents issued to me an Employee Warning Letter. My performance did not

warrant an Employee Warning Letter. The Employee Warning Letter contained false statements and misrepresentations. My performance was unjustly criticized, and I was told that I would not be compensated for the CVS Health/Caremark/Aetna account I had secured that was removed from me and given to MacDonald.

[64]    On August 5, 2020, following the above meeting, I went out of work on a medical leave of absence due to the race- and retaliatory-based hostile work environment to which I have been subjected.

[65]    Respondents have been trying to push me out because of my race and/or race discrimination complaints.

[66]    Respondents failed to compensate me for the CVS Health/Caremark/Aetna account I secured because of my race and/or race discrimination complaints.

[67]    Respondents removed accounts from me, which impacted my compensation and future opportunities, because of my race and/or race discrimination complaints.

[68]    Respondents failed to promote me because of my race and/or race discrimination complaints.

[69]    Respondents subjected me to a hostile work environment because of my race and/or race discrimination complaints.

[70]    Before I complained of race discrimination, I had no performance issues throughout my employment with Respondents.

[71]    Respondents' race discriminatory and retaliatory conduct toward me has caused me emotional distress.

[72]     I bring this Complaint as a class and pattern and practice Complaint on behalf of myself and any and all current or former employees of Respondents who are black, and who have been discriminated against based on race in connection with hiring, promotion, demotion, compensation, being subjected to a hostile work environment, position selection, and termination.

B.  Based on the aforementioned, I allege that Respondents have discriminated against me because of my race (black), and retaliated against me because of my race discrimination complaints, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

4.     The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

    __X__     Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s): __(a); (d)__

    _____     Section 5.1 Subsection(s) _____

    _____     Section 5.2 Subsection(s) _____

    _____     Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

5.     Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

  __X__  This charge will be referred to the EEOC for the purpose of dual filing.

6. The Complainant seeks that Respondents be required to:

 (a) Make the Complainant whole.

 (b) Eliminate all unlawful discriminatory practice(s) and procedure(s).

 (c) Remedy the discriminatory effect of past practice(s) and procedure(s).

 (d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

 (e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

11/23/2020
(Date Signed)

Marian T. Washington-McQuay
(Signature)    Marian "Josie" Washington-McQuay
REDACTED
West Chester, PA 19382

# EXHIBIT 4

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Philadelphia District Office
801 Market St ,Suite 1000
(267) 589-9700
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

To: Marian Washington-McQuay
REDACTED
West Chester, PA 19382

Re: Marian  Washington-McQuay v. WW HEALTH SOLUTIONS; WW NORTH AMERICA
HOLDINGS, INC.; WEIGHT
EEOC Charge Number: 17F-2021-60874

EEOC Representative and email:     Damon Johnson
                                   State, Local & Tribal Program Manager
                                   DAMON.JOHNSON@EEOC.GOV

### DISMISSAL OF CHARGE

The EEOC is closing this charge because Charging Party Filed Suit.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If
you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal
or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.**
Receipt generally occurs on the date that you (or your representative) view this document. You
should keep a record of the date you received this notice. Your right to sue based on this charge
will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit
based on a claim under state law may be different.)

Please retain this notice for your records.

On Behalf of the Commission:

Digitally Signed By: Karen McDonough
02/01/2022

Karen McDonough
Enforcement Manager

CC:

For Respondent:
WW HEALTH SOLUTIONS; WW NORTH AMERICA HOLDINGS,
INC.; WEIGHT
675 Sixth Avenue, 6th Floor
New York, NY 10010

For Charging Party:
Emily R Derstine Friesen
Console Mattiacci Law, Llc
1525 Locust Street, 9th Floor
Philadelphia, PA 19102